## LOGAN v. BROWN.

No. 1740, Okla. T.   Opinion Filed March 9, 1908.

(95 Pac. 441.)

1.   LIMITATION OF ACTIONS—Relief on Ground of Fraud—Statute Applies, when.   The statutory limitation of the time within which "an action for relief on the ground of fraud" must be com-menced only applies when the party against whom the bar of the statute is interposed is required to allege fraud in plead-ing his cause of action, or to prove fraud to entitle him to relief.

2.   TRUSTS—Validity of Oral Trusts. A petition for an accounting for the proceeds of the sale of certain real estate, title to which was placed in defendant under a verbal promise for this purpose, is not vulnerable on demurrer on the ground that a parol trust in real estate is declared on.

3.   SAME. One who takes title to real property under a parol agree-ment to sell the same as an agent, and sells it and receives the money therefor, is liable to the grantor for the proceeds.

4.   FRAUDS, STATUTE OF—Contracts Performed as to Part Within Statute.   The provisions of the statute of frauds or of uses and trusts have no application where the agreement has been com-pletely performed as to the part thereof which comes within the

Statement of the Facts.

statute, and the part remaining to be performed is merely a payment of the money, the promise to do which is not required to be in writing.

5, APPEAL—Review—Harmless Error—Statement in Order of Reference. Where in a suit defendant denies any liability to plaintiff and any foundation for the suit, but agrees for a reference of the same for trial before a referee, it is not error for the court in its order to state, "it appearing to the court that this is a case involving an accounting," etc., in the absence of any evidence that the referee was influenced in his findings thereby.

6. APPEAL AND ERROR—Presumptions—Oath of Referee—Waiver of Irregularities. Where a record is silent upon the question of a referee having taken an oath as required by law, the presumption will be indulged that such oath was taken, and, even though omitted, it will be held an irregularity only, and waived by a party who proceeds to trial without objection on this point.

(Syllabus by the Court.)

*Error from District Court, Kingfisher County; before C. F. Irwin, Judge.*

Action by Hattie A. Brown against G. H. Logan. Judgment for plaintiff, and defendant brings error. Affirmed.

On June 24, 1901, Hattie A. Brown, who will hereafter be denominated "plaintiff," filed her petition in the district court of Kingfisher county against G. H. Logan, who will hereafter be denominated "defendant," in which she alleged that she was a widow 65 years of age, and sister-in-law to defendant, and that on the 9th day of December, 1896, and for many months prior and subsequent thereto, was sick and infirm in body and mind, and unable both mentally and bodily to attend to her ordinary business affairs. That on said date defendant persuaded her to turn over to him her property and the management of her business and financial affairs, assuring her "that if she would do so he would handle and manage the same, and render her a strict account, and to turn over to her all rents and moneys that he could realize from her property"; and that she, trusting and confiding in him, made him her confidential and trusted agent for the purposes mentioned, and that the rela-

tions aforesaid between the plaintiff and defendant, and on the terms and conditions aforesaid, began between them on the 9th day of December, 1896, and continued until on or about the 1st day of January, 1900.

That on January 2, 1897, she executed a deed to the defendant for lots Nos. 21, 22, 27, 28, 29, 30, 31, and 32, in block 39, Oklahoma City, Okla. T.; and that between the 9th day of December, 1896, and the 1st day of January, 1900, the defendant collected rents from the premises mentioned in the sum of about $1,200. That, in addition thereto, he collected a judgment in the sum of about $500 owned by plaintiff. That on October 4, 1898, he received from Pearl E. Stafford the sum of $2,500 for lots Nos. 29, 30, 39, and 32, in block 39, Oklahoma City. That on the 18th day of April, 1899, he received from A. J. Burnham the sum of $1,250 for lots Nos. 21 and 22 in block No. 39, Oklahoma City. That on July 17, 1899, he received from Virginia R. Allen the sum of $1,200 for lots Nos. 27 and 28 in block No. 39, in said Oklahoma City.

That, during the time the relation above mentioned existed, the defendant had received the moneys of plaintiff from rents, collection of judgment aforesaid, and sales of real estate mentioned, to about the sum of $7,650; averring that she was unable to give the exact amount by reason of the fact that he refused to give her any account thereof.

"That on and since the 1st day of January, 1900, the plaintiff has repeatedly asked and demanded of the defendant that he render to her a full and correct account of all her business handled by the defendant as aforesaid, and asked and demanded of him that he turn over to her all moneys held by him as the proceeds of said collections of money had and received by the defendant in the capacity aforesaid, all of which the defendant refuses and neglects to do."

That, since being vested with the authority and the property of plaintiff as aforesaid, the defendant has in no manner accounted to her for money received by him, except the sum of about $1,450,

the exact amount being unknown to plaintiff, by reason of the fact that defendant refuses to inform her thereof, which sum was used in payment of mortgage indebtedness on her property, and except the further sum of $1,400 that the defendant has paid to her in money.

"This plaintiff now avers to the court that the defendant caused her to turn over to him her business affairs as aforesaid, for no other reason than that of cheating and defrauding her out of her property, money, and effects, and that in procuring this plaintiff to so trust him as herein stated the plaintiff in her weak and sick condition was misled by the defendant, and led to believe that he was her friend, and would be her confidential adviser, and would aid her in all possible ways to conduct her business affairs in a careful and economic manner. That, as soon as the defendant obtained possession of her said property and business affairs aforesaid, the defendant at once began to treat the plaintiff in a harsh manner, and when the plaintiff would seek to advise with the defendant about her business matters the defendant would at once fly into a rage and abuse the plaintiff and inform her that it was none of her business what he was doing with her property or what he was doing with her business affairs, and for her to keep her mouth shut and let him alone—that he would neither advise with her as to said business matters, nor allow her to ask him about same."

She then prayed the court to take an account of all the transactions had and done between herself and the defendant, and to compel him to render a full and complete account of all his doings in the matters set forth, and that she take judgment against him for such sums of money as the court finds are due her.

To this petition the defendant filed a demurrer, which was overruled by the court, and to which ruling an exception was saved. He thereafter filed an answer in two counts, the first being a general denial, and the second alleging that the transfer of the real property by plaintiff to defendant was a *bona fide* transaction between them, and that he paid her a reasonable and fair price for the lots; that the same was true in reference to the assignment of judgment which he purchased at the same time. He further denied

Vol. 20—22

that he was in any way indebted to the plaintiff, or that he ever held any of her property as alleged by her.

On March 2, 1903, the court made an order based upon a written stipulation signed by the attorneys of the parties, referring the case to A. H. Huston to try on both law and fact. The reply, which was a general denial under the terms of the stipulation, was filed with the referee.

Thereafter, and in July, 1903, both parties appeared personally and by counsel, at the office of said referee, in the city of Guthrie, Logan county, territory of Oklahoma, and submitted their evidence, consisting of the testimony of themselves and one witness delivered orally, certain documentary evidence, and deposition of witnesses taken on both sides. On this evidence the referee made his findings, the salient and controlling portions of which are as follows:

"That in the year 1896, and prior thereto, plaintiff was the owner of several parcels of real estate in Oklahoma City, Oklahoma county, Okla. T., included in which were lots one (1) and two (2) in block forty (40), and lots twenty-one (21), twenty-two (22), twenty-seven (27), twenty-eight ,(28), twenty-nine (29) thirty (30), thirty-one (31), and thirty-two (32), in block thirty-nine (39).

"That the defendant is now, and was at all times mentioned in the pleadings, a brother-in-law of the plaintiff.

"That in the year 1896 the plaintiff, who was then an old lady of about 60 years of age, had become embarrassed with debt and worried over financial matters.

"I find from the evidence, and also from the appearance and demeanor of the plaintiff at the time of the trial, that she was in ill health, exceedingly nervous, and not capable of fairly and intelligently attending to the details of business transactions, and that such condition had existed during all the times mentioned and referred to in the pleadings and evidence in said case.

"That on the 2d day of January, 1897, the plaintiff conveyed to the defendant said lots 21, 22, 23, 28, 29, 30, 31, and 32 in said block 39, Oklahoma City, and that the consideration expressed in the deed was $1,500, and that said premises were then of the value of $3,000, but that the real purpose of said conveyance was

to give the defendant control and management of the said property of the plaintiff in trust for her.

"That on the said 2d day of January 1897, the plaintiff also assigned to the defendant a certain judgment which she had obtained in the district court of Oklahoma county against E. T. Wood and W. J. Wood. That this judgment was obtained upon a certain note, but that the lower court refused to decree the foreclosure of the mortgage securing the same, that plaintiff appealed to the Supreme Court of the territory, and that in the month of September, 1896, the Supreme Court handed down a decision reversing the lower court and ordered a decree of foreclosure, and it is found, that at the time of the assignment of said judgment the same was worth the sum of $500, and it is further found that said assignment was made by the plaintiff for the purpose of giving to the defendant the control and management of the same and to collect the same and hold the proceeds in trust for her.

"That the plaintiff is entitled to an accounting with the defendant, and that in such accounting the defendant should be charged as follows:

| | |
|---|---|
| To proceeds of sale of lots 29, 30, 31, and 32, block 39 | $2,000.00 |
| To proceeds of sale of lots 21 and 22, block 39 | 1,250.00 |
| To proceeds of sale of lots 27 and 28, block 39 | 1,200.00 |
| T sum collected from rents and Wood judgment | 936.88 |
| Total | $5,386.88 |

And the defendant is entitled to credits as follows:

| | | |
|---|---|---|
| By debts and expenses paid | $1,399.00 | |
| By cash paid to plaintiff | 1,500.00 | |
| By compensation for services rendered | 250.00 | |
| Total | $3,149.00 | $3,149.00 |
| To balance | | $2,237.88 |

"I find that the plaintiff first demanded of the defendant a settlement and a payment to her of all moneys in his hands belonging to her on or about the 1st day of January, 1900, and that the defendant refused to comply with such demand, and that the plaintiff is entitled to recover interest of and from the defendant on the sum of money in his hands belonging to her from the 1st day of January, 1900."

From the findings of fact the referee concludes:

"That the plaintiff is entitled to recover of and from the de-

fendant the sum of $2,237.88, together with interest thereon at the rate of 7 per cent. per annum from the 1st day of January, 1900, and costs of suit."

On returning the report, accompanied by the evidence, to the district court of Kingfisher county, the defendant filed a motion to set aside the report of the referee, setting out numerous grounds therefor; those which are argued and relied upon in the brief being considered in the opinion.

On the 18th day of May, 1904, the court overruled said motion, confirming said report, and rendered judgment in favor of plaintiff and against the defendant in the sum of $2,924. Motion for new trial was filed and overruled, and the case is regularly before this court for consideration, on appeal.

*H. H. Howard* and *P. S. Nagle,* for plaintiff in error.
*J. C. Roberts* and *Roberts & Bowman,* for defendant in error.

DUNN, J. (after stating the facts as above). Under the demurrer filed by the defendant to plaintiff's petition, three propositions are argued: First, that the action herein was one for relief on the ground of fraud, and that the same was not commenced within two years of the discovery; second, that "inasmuch as it concerns an interest in land, and is in parol, it is void by the statute of frauds, and, appearing as it does on the face of the bill, the defense of the statute of frauds may be taken advantage of on demurrer"; and, third, under the allegations of the petition, defendant was constituted trustee of an express trust, and "that no trust in relation to real property is valid unless in writing"; and that under either or all of these contentions the petition showed that it did not "state facts sufficient to constitute a cause of action against the defendant and in favor of plaintiff."

We are unable to agree with defendant that this action is one for relief on the ground of fraud committed by the defendant against the plaintiff, and from which fraud she is seeking relief. The allegations of the petition in reference to the fraud are more

in the nature of inducement and explanation than a statement of the grounds upon which she relied to recover. These are set forth to show the relationship existing between the parties, and the conditions under which she claims the contract was made, rather than a statement of the gist of her action. She alleges that the property which defendant secured from her produced a certain amount of money, that he received this money in the capacity of her agent, and that, having so received it, he was indebted to her in this sum, and then asked in her prayer for an accounting between them. She would be just as much entitled to recover without these allegations of the deceit as she is with them. They add nothing to her right to the money received by Logan on the sale of her property. It would be a sad commentary upon the law of our land if it were such that, leaving out all question of confidential relationship or deceit, a man dealing with another could receive from him on a verbal contract a deed to his real property for the purpose of sale and then sell it and appropriate the money, refuse it on demand, and the courts be unable to assist the owner in getting it. Such is not the case, however, for they may do so, and that, too, when there is absolutely no fraud committed. The grantor cannot compel grantee to sell because of the written letter of the statute, but when he does sell and receives the money, the courts will compel him to account for it.

The limitation fixed by the statute for actions of this character comes within the provisions of the second subdivision of section 18, art. 3, c. 66, of the Code of Civil Procedure, which provides that such a cause of action can only be brought within three years after it shall have accrued, and not under the third subdivision, which provides "for relief on the ground of fraud," which can only be brought within two years. The limitation in the subdivision last mentioned is that "the cause of action in such case (fraud) shall not be deemed to have accrued until the discovery of fraud." In our judgment, the petition, even though it were strictly sounding in fraud, and sought damages by reason thereof, would not be barred under its allegations, as it alleges that "on and since the

1st day of January, 1900, the plaintiff has repeatedly asked and demanded of the defendant that he give to her a full and correct accounting," etc. There does not appear to have been any demand and refusal of accounting prior to this time. The discovery of fraud, if fraud existed, would not be concluded against plaintiff until a demand on her part for an accounting, and the refusal of the defendant, had transpired. The last sale of property was made July 17, 1899. This action having been begun on June 24, 1901, was within the two-year limitation, even though fraud was relied upon. But this is not an action sounding in fraud. Plaintiff was not required to allege fraud in her pleading, nor to prove fraud to entitle her to relief. In the case of *Brown et al. v. Cloud County Bank et al.*, 2 Kan. App. 352, 42 Pac. 593, the court held in the syllabus that:

"The statutory limitation of the time within which 'an action for relief on the ground of fraud' must be commenced only applies when the party against whom the bar of the statute is interposed is required to allege fraud in pleading his cause of action, or to prove fraud to entitle him to relief."

The defendant next contends that the petition fails to state a cause of action for the reason that it was based on a contract for the sale of real property or interest therein, and hence invalid unless in writing. An inspection and reading of the petition fails to disclose whether the agreement plaintiff contends for was in writing or was merely oral, and the rule seems to be that, "if the complaint fails to show whether the contract in suit was verbal or in writing it will be presumed to have been in writing for all the purposes of the demurrer." *Miles* v. *Thorne*, 38 Cal. 335, 99 Am. Dec. 384; *Broder v. Conklin*, 77 Cal. 330, 19 Pac. 513; 20 Cyc. 308, and cases cited. Hence the demurrer cannot be sustained on this ground.

The third proposition raised by the defendant is one most insistently argued and contended for both under the allegations of the demurrer and under the proof offered in the case, and the statute invoked is section 64, art. 4, c. 65, Wilson's Rev. & Ann. St.

1903, under the title of "Uses and Trusts," which provides as follows:

"No trust in relation to real property is valid, unless created or declared:

"First: By a written instrument, subscribed by the trustee (trustor) or by his agent thereto authorized by writing.

"Second: By the instrument under which the trustee claims the estate affected; or

"Third: By operation of law."

. If the petition was good against the demurrer under the statute of frauds, it was also good under the provisions of the statute of uses and trusts. The former statute provides that the contract shall be invalid, and the latter statute provides that no trust in relation to real property is valid unless in writing; but the statute last referred to provides, in addition thereto, "unless created or declared by operation of law." Under this last provision the courts have exercised very broad discretion in excepting and taking out of the operation of the statute many cases where accident, fraud, or mistake have intervened, and where it would be inequitable to allow the grantee to retain real property, title to which had been procured under a verbal promise. So that the demurrer must of necessity be overruled for the reason that the petition is not vulnerable owing to any of the deficiencies mentioned appearing on its face, as well as appearing that it is not a suit to enforce an unwritten trust in relation to real property.

The provisions of the two statutes last mentioned are again invoked by the defendant under the findings of the referee and are insistently argued and relied upon for a reversal; hence it becomes necessary to discuss them and the authorities cited in connection therewith. He assumes that this case is within the restricting provisions of the statute of frauds and the statute of uses and trusts, and that appellee cannot recover herein because the contract as shown by evidence was not reduced to writing; that it involved a trust for an interest in real estate and was void; and that the deed and conveyance made by Mrs. Brown to defendant, by reason of these facts, was absolute and valid.

In support of this proposition he cites the Kansas case of *Gee et al. v. Thrailkill*, 45 Kan. 173, 25 Pac. 588, and so strenuously insists in his brief and oral argument that the case at bar is controlled by the principles involved in that case that we recite the facts on which it was decided for the purposes of distinguishing it. Thrailkill owned some real estate in the town of Harper, Kan., and conveyed the same in 'fee to his sister, Mrs. Gee, by a general warranty deed, absolute on its face, with an expressed consideration of $1,500, but with no actual consideration except a parol understanding between them that she would sell or mortgage the property and thereby obtain funds for the grantor, and would convey back to him, whenever he might so desire, any part of the property remaining in her hands. Under this state of facts, the grantee, neither selling nor mortgaging the land, and Thrailkill, demanding that she reconvey the same to him, on her refusal brought an action in the district court to obtain title to the property. The court held that the parol trust with respect to the real estate involved was void, and that the deed and conveyance was absolute and valid. The statutes of Kansas relating to frauds and perjuries (section 5, Gen. St. 1901, p. 674), and to conveyances (section 8, Gen. St. 1901, p. 274), and to trusts and powers (section 1, Gen. St. 1901, p. 1596), all carry with them substantially the same language that is contained in our statute of uses and trusts, which makes invalid any trust relation to real property unless in writing, except it be *by operation of law*. These Kansas statutes referred to were all cited by Justice Valentine in support of his opinion, and the force given them in the conclusion reached was practically a holding that the trust sought to be created was one in real property which must of necessity be in writing to be valid, and the circumstances surrounding the case were not such as to create a trust by operation of law. Three cases, namely, *Morrall v. Waterson*, 7 Kan. 199, *Knaggs v. Mastin*, 9 Kan. 532, and *Ingham v. Burnell*, 31 Kan. 333, 2 Pac. 804, are cited to support the text of the opinion, but a critical reading of them will readily

show that they fail to support it. In neither of them do the controlling facts approach the condition in the *Gee v. Thrailkill Case*, and indeed we question very much whether it were possible to find any Kansas authority to support it. Under the facts of the case the holding is practically an exception to the rule, as the courts have nearly always granted relief in similar instances. Indeed this has so universally been done that the Supreme Court of Wisconsin in the case of *Rasdall v. Rasdall*, 9 Wis. 387, say:

"It is impossible to reconcile with principle very many of the adjudications upon the statute of frauds. Courts seem to have been so intent upon administering justice in the particular case that they have frequently lost sight of its provision, and their action has often amounted to little less than the exercise of the right to repeal, or suspend its operation whenever they deemed that the real justice of the case required it."

Hence the hard and fast rule adopted by the Kansas court in this case makes it virtually an exception among the adjudications. The courts very generally, under the power given them by virtue of the force of the provision, or by operation of law, and other similar clauses, exercise the utmost liberality in extending a helping hand to those, who, through fraud, accident, or mistake, or even misdirected confidence, have been deprived of their real estate by virtue of a contract not reduced to writing. Indeed, as was said in the Wisconsin case, "they have been so intent upon administering justice in the particular case" that they have virtually made of it a statute to be followed only when it would not bring about the result of defrauding some one, and to ignore it when such result would follow.

"The court will not allow the statute of frauds to be used as an instrument of fraud if it can prevent it." (*Bork v. Martin*, 132 N. Y. 280, 30 N. E. 584, 28 Am. St. Rep. 570.)

But the facts in the case of *Gee v. Thrailkill* are not similar to the facts in the case at bar. In that case the deed was taken by the grantee under a parol agreement to sell or mortgage and to reconvey any overplus. Grantee refused to do either, and the court

held that she could not be compelled to do so. An altogether different condition exists in the case at bar. Here the defendant took the deed to this property for the purpose of selling it, and he did sell it and has the money, and this suit is brought not to recover any interest in real property, nor to compel a reconveyance, but for the money received by an agent from its sale. If Logan had kept the property, no court could compel him to sell it. Whether he could have been compelled to account for its value or not is not in this case, but practically all of the authorities so hold.

"Where lands are conveyed to defendant on his parol agreement to pay a mortgage thereon, sell the land and account to the grantor for the proceeds, and, after getting possession, defendant refuses to perform such agreement, plaintiff may recover the value of the property, even though the agreement is within the statute of frauds." (*O'Grady v. O'Grady,* 162 Mass. 290, 38 N. E. 196.)

"If one convey land to another under an oral agreement which the other refuses to perform and cannot be compelled to perform on account of his setting up the statute of fraud, he who conveyed the land can recover its value from the grantee on the ground that the consideration for the conveyance has failed and he is entitled to be reimbursed. (*Presbury Cromwell v. Susan Norton,* 193 Mass. 291, 79 N. E. 433.)

Also, *Peabody v. Fellows,* 177 Mass. 290, 58 N. E. 1019.

But we are not to deal with the situation suggested by either proposition above mentioned, but a situation where the grantee, under a parol contract to sell, has actually fulfilled that portion of the contract within the statute of frauds, and nothing remains to be enforced by a court but that part of the contract that never was in the statute, and against which it does not operate. Volume 29 of Am. & Eng. Ency. of Law, p. 832, under the title of "Verbal Agreements," and the sub-title relating to lands, holds:

"The statute of frauds has no application where the agreement has been completely performed as to the part thereof which comes within the provisions of the statute, and the part remaining to be performed is merely the payment of money or the performance of some act the promise to do which is not required to be put in writing."

The authorities seem to support this statement. The case of *Hays v. Reger*, 102 Ind. 524, 1 N. E. 386, was one which involved a parol agreement to convey real property. The trust had been executed, and the court said:

"The trust having been executed, we need not determine whether it was one arising by application of law, or whether it was an express trust."

So that in the case at bar, the trust having been executed, it is of no consequence whether the agreement between the plaintiff and defendant in reference to the land was a parol agreement or whether it had been reduced to writing.

The facts in a New York case, *Bork v. Martin,* 132 N. Y. 280, 30 N. E. 584, 28 Am. St. Rep. 570, are very similar to those in this case. Martin took the naked title to certain lots, agreeing at the time to convey the same upon grantor's request to such purchasers as could be procured, and pay over the purchase money received. He sold the lots and refused to pay the money, just as did Logan in this case. When he was sued, as was Logan, he set up the statute of frauds and of uses and trusts, just as does Logan, and the court, in passing on that case, said:

"Assuming that the land was conveyed to the defendant upon an oral trust, invalid under the statutes of frauds and of uses and trusts (2 Rev. St. [1st Ed.] p. 184, § 6; 1 Rev. St. [1st Ed.] p. 728, § 51), yet it was lawful for him to perform it, and he has fully performed it so far as it required him to dispose of the land. The land is all sold, and he has the price of the last five lots in his pocket. The language of the cases is to the effect that he cannot, in good conscience, retain it, and that it belongs to the plaintiff. *Robbins v. Robbins,* 89 N. Y. 258; *Dunn v. Hornbeck,* 72 N. Y. 80; *Foote v. Bryant,* 47 N. Y. 544. Though the statutes might have justified the defendant's refusal to dispose of the land as he had orally agreed, yet having disposed of it, he has voluntarily emerged from the field of their protection, and exposed himself to the law, which deals with him as a trustee of personal property realized for plaintiff's benefit, by virtue of an agency for the plaintiff, which he has so far performed, pursuant to the plaintiff's instructions and his own agreement, as to obtain

the moneys his agency was constituted to produce. Equity approves his performance, so far as he has performed, and, as the statutes referred to no longer apply, there is no law which he can invoke to shield him from the full performance of his duty. The court will not allow the statute of frauds to be used as an instrument of fraud if it can prevent it. Cases *supra; Ryan v. Dox,* 34 N. Y. 307, 90 Am. Dec. 696; *Levy v. Brush,* 45 N. Y. 596; *Siemon v. Schurck,* 29 N. Y. 598."

A Michigan case, *Lasley v. Delano et ux.,* 139 Mich. 602, 102 N. W. 1063, is one in some respects similar to the case at bar. When the grantor in that case attempted to compel the party taking the grant to account for the moneys realized from the sale of the real property based on a verbal agreement, defendant, as is done in this case, set up the statute of frauds, and of uses and trusts, and the court, in considering same, speaks as follows:

"Neither the statute of frauds, nor that of uses and trusts, applies to this case. The parol contract between complainant and Mr. Delano has been performed, and the parol trust imposed upon him fully executed. No contract for the sale of lands is involved. The relation of vendor and vendee did not exist between them. Complainant conceded his right to sell and receive the money, and that he did sell and receive the money. The relation, then, between them was not other or different than it would have been if she had sold the lands herself and intrusted the money to him, to be disposed of as directed and agreed by her. *Petrie v. Torrent,* 88 Mich. 43, 49 N. W. 1076; *Carr v. Leavitt,* 54 Mich. 540, 20 N. W. 576; *Edinger v. Heiser,* 62 Mich. 598, 29 N. W. 367. If, however, the trust rested in parol, and while so resting could not be enforced as an executory contract, yet, when the parol agreement has been executed, neither party can invoke the statute. The courts have repeatedly held that a party may perform a promise which he could not legally be compelled to perform, and that, when so performed, it is binding upon him and the other party to it. *Moore v. Crawford,* 130 U. S. 122, 9 Sup. Ct. 447, 32 L. Ed. 878; *Desmond v. Myers,* 113 Mich. 437, 71 N. W. 877; *Collar v. Collar,* 86 Mich. 507, 49 N. W. 551, 13 L. R. A. 621; *Bork v. Martin,* 132 N. Y. 282, 30 N. E. 584, 28 Am. St. Rep. 570; *Gwaltney v. Wheeler,* 26 Ind. 415."

In a Connecticut case, *Collins v. Tillou, Adm'r,* 26 Conn. 368,

68 Am. Dec. 398, Collins owning some property near Chicago, Ill., made a warranty deed of the land to one John Tillou under a parol agreement that he should act as Collins' general agent in making a sale of the same. The deed recited the consideration as "a valuable sum in dollars, and other considerations received, to our full satisfaction," although there was no actual consideration. After selling the land, Tillou refused to make any accounting to Collins, and subsequently died, and this was a suit by Collins against his estate for the amount of money received for the land. The statute of frauds, and the rule that parol evidence was inadmissible to vary the terms of a valid written instrument, were both invoked, but the court held that there was no force in either objection, and gave judgment to Collins for the amount received, allowing Tillou's estate compensation for the services rendered, just as was done by the referee in the case at bar.

The case of *Collar v. Collar,* 75 Mich. 414, 42 N. W. 847, 4 L. R. A. 491, was one wherein Hamblin D. Collar, under a parol understanding, received title to certain lands for the purpose of sale and accounting to the grantors. He sold the same, and this action was to compel him to pay the money to those to whom it belonged, the suit being for money had and received, and the court, under the facts stated, directed a verdict for the defendant. The theory presented by the appellant in the case at bar was urged and the Supreme Court, by Long, J., says:

"It was not an interest in the land which plaintiff was seeking to recover, but his proportionate share of the fund growing out of the sale of the land."

And the court in the syllabus holds:

"That an action will lie for money had and received by a grantee on the sale of land conveyed to him under a parol trust to make such sale and distribute the proceeds among the grantors."

In the case of *Edinger v. Heiser,* 62 Mich. 598, 29 N. W. 367, a tract of land was conveyed to Andreas Heiser under a parol agreement that he would sell the same and use the avails as an investment for his support, and on his death that the same should go to

the grantors.   He sold his land for $3,700 to one Vincent Greiff, and refused to make any account to the grantors of the proceeds. The grantors were his children by his first wife.   The question of whether or not the children could recover the money paid by Greiff to their father for this land was disposed of by the court in the following words:

"It is the same, in my opinion, as if the children had themselves deeded direct to Greiff and received the money into their own hands, and then afterwards placed it in the keeping of their father on the same terms as he now holds it—to use the interest, but to reserve the principal for them at his death.   There is no question but that such a trust is valid and enforceable.   See Perry, Tr. art. 86, and cases cited; *Chadwick v. Chadwick*, 59 Mich. 87, 26 N. W. 288; *Leland v. Collver*, 34 Mich. 418; *Ellis v. Secor*, 31 Mich. 186, 18 Am. Rep. 178."

See, also to the same effect, *Bitely v. Bitely*, 85 Mich. 227, 48 N. W. 540; *Wiseman v. Baylor*, 69 Tex. 63, 6 S. W. 743; *Desmond v. Myers*, 113 Mich. 437, 71 N. W. 877; *Whipple v. Parker*, 29 Mich. 369; *Karr v. Washburn*, 56 Wis. 303, 14 N. W. 189; *Bourne v. Sherrill*, 143 N. C. 381, 55 S. E. 799.

It will thus be seen from the law as declared in the foregoing authorities that, where one takes title to real property under a parol agreement to hold the same and sell it as an agent for the grantor, after having sold it and received the proceeds, he is liable for the proceeds thereof to the grantor.

The other objections made are now considered.   It was contended that it was error for the referee to overrule the objection to the introduction of evidence for the reason that the petition did not state a cause of action.   Appellant calls attention to the authorities cited in support of his demurrer to the petition, and, as we have dealt with them and held that the petition stated a cause of action, no error was committed by the referee in hearing the evidence thereunder.

The point is then made that the referee erred in proceeding to take an accounting between the parties, and allowing plaintiff to

introduce depositions and certified copies of deeds before any tes-
timony was introduced to show a trust; stating: "No testimony
could be properly received by the referee in this case until the trust
was first established and the fraud of Logan proved as a substan-
tive fact." As the referee was authorized to try the case as a court,
the order of proof was a matter clearly within his right to control,
and the objection made by the defendant cannot be sustained, as
no prejudice was shown by this procedure. Whether the deeds and
depositions were introduced prior to the evidence given by the
plaintiff and defendant, or subsequent thereto, was practically of
no consequence.

The next point made is to the refusal of the referee to allow
the defendant to answer the question, "I will ask you if you were
not called down there by Mrs. Brown for the reason that he (mean-
ing Riley) was demanding payment?" In view of the fact that
this is immediately followed in the record by the statement of the
witness, "She wrote for me to come and help her, * * * she
wanted me to help her out," this error, if error it was, was not
prejudicial, because, if the question to which objection was sus-
tained were answered in the affirmative, it would not have proved
more than the affirmative evidence given by the witness on the same
point.

It is next contended that the referee erred in sustaining ob-
jection to the question asked by the defendant, "Did she at that
time call for any statement or account of these lots?" The next
question asked by counsel was, "You may state if any conversation
was had," and the answer was, "I cannot recall any," so that here
again the evidence asked for was secured under another question,
and no error followed.

It is contended that the referee erred in not allowing Logan
to introduce in evidence the $1,000 in notes. The plaintiff testi-
fied that she never received these notes, and the referee specifically
finds "that no notes were delivered to the plaintiff at the time of
the conveyance and assignment of judgment referred to, and that

the notes offered in evidence were retained by the agent of the defendant, R. C. Brennon." The objection made in the case of their being offered in evidence was that they were incompetent and immaterial, and the referee's ruling was, "The objection is sustained for the present, excepted to by defendant." This ruling is followed in the record by a number of copied notes with the statement thereon, "The following are the notes offered in evidence." The testimony in reference to the notes by witness Brennon and the incorporation of them in the record, and a specific finding upon them by the referee, convinces us that they were afterward admitted in evidence and considered by the referee, and hence there was no error on this point. In view of the fact, however, that the referee finds that no notes were ever delivered to Mrs. Brown, we question whether error would have been committed even though they had been excluded altogether.

The next point made is that the referee erred in not allowing this question to be answered by the defendant: "Did you have any agreement with Mrs. Brown whereby you were to return this property to her?" Objection was urged and sustained. The most that appellant could expect from an answer to the question was a negative, and all that a negative would show in answer to that question was testified to, fully and completely, by defendant when he stated in his examination that he never had any of her property in his name, and that he did not owe Mrs. Brown anything then or at the time of the filing of her suit; and, furthermore, there is no allegation in the petition nor any evidence offered that defendant ever agreed that he was to return the property to her. The question was not within the issues of the case, and there was no error in not allowing it to be answered.

The point is also made that there was no formal or proper reference made in the case. Stipulation was filed by the parties as follows:

"That said cause shall be referred, and that the referee shall make findings of fact and report his conclusions of law, and that the issue may be joined after such reference."

On this stipulation the court made the following order:

"It appearing to the court that this is a case involving an accounting and same should be referred, and both parties consenting thereto, it is ordered that said cause be and hereby is referred to A. H. Huston on law and facts as appeared by stipulation on file."

Defendant argued that this reference was prejudicial, because, under the pleadings, it was necessary to find Logan guilty of a fraud before he could be compelled to account. While it is true before any accounting could be had it was necessary to find an indebtedness which was denied, it would not have been necessary to find fraud, and even though it were the entire matter, either of fraud or indebtedness, was before the referee, and we can hardly say, in the absence of any evidence whatever, that he was influenced by the language mentioned to find for the plaintiff and against the defendant.

The defendant next objects to the consideration of the report of the referee on the ground that he was not sworn, and cites in support thereof *Province v. Lovi,* 4 Okla. 672, 47 Pac. 476. In that case it appears that an oath was taken by the referee, and it was contended that it was not in the form prescribed by the statute. In the present case the record appears to be silent on the question of whether the referee was sworn, and it is our judgment that in cases of this character the presumption would be upon such a record that the referee took the oath as prescribed by law, as all officers are presumed to do their duty. The failure of a referee to take the oath required by law is a mere irregularity which is waived by the parties proceeding to trial without objection on that ground. *Lamaster v. Scofield,* 5 Neb. 148; *Board of Supervisors v. Ehlers.* 45 Wis. 281; *Newcomb v. Wood,* 97 U. S. 581, 24 L. Ed. 1085. The referee Huston was agreed upon by the parties, and defendant appeared personally before him in his office in Logan county, outside the judicial district in which the case was pending, and submitted, without objection, his evidence, thereby waiving any

Vol. 20—23

irregularity either in the trial of the case at that place or the consideration thereof by the referee at such place, although there is nothing in the record to show that the same was considered and the conclusion arrived at outside of Kingfisher county.

It is next objected that motion of plaintiff to affirm the report of the referee was sustained by the court without reading the testimony in said cause, and this action of the court is urged as error. We know of no authority, and none is cited us by counsel, holding that it is error for a court to sustain the findings of a referee without reading the testimony introduced. Furthermore, the judgment rendered by the court herein contains a specific statement, "Therefore plaintiff's motion for judgment upon the report ·of the referee coming on, and all parties being present, after due consideration thereof, the court finds that the acts and conduct of said referee in the trial of said cause are regular and legal in all respects." And, while the recital in the case-made contains the statement that the court sustained the report of the referee "without reading· the testimony in said cause," this cannot overcome the specific finding of the court in the judgment of due consideration. See *Day v. Territory*, 2 Okla. 409, 37 Pac. 806; *Abel v. Blair*, 3 Okla. 399, 41 Pac. 342. In the case last cited, the court says in the syllabus:

"The records of the court incorporated into a case-made cannot be contradicted by other statements contained in the case-made."

We see no reason to depart from the holding of this court in the case *In re Dossett*, 2 Okla. 369, 37 Pac. 1066, hence the objection made by defendant to the jurisdiction of the trial court to render judgment herein on the 18th day of May, 1904, the same being at an adjourned day of the March, 1904, term of the district court of Kingfisher county, and this notwithstanding the fact that between the setting of the said March, 1904, term of said court and the reconvening of the said court in May of the same year, there had been held by the judge of said district one or more reg-

ular terms of court therein. Hence there was no merit in the objection urged.

The issues herein have been submitted to a referee, who heard the evidence and made his findings thereon. The district court to which he made report confirmed and approved such finding, and, there appearing no error raised by the appellant in this court, the judgment is accordingly affirmed.

Turner and Hayes, JJ., concur; Williams, C. J., and Kane, J., dissent.