## ROBERTSON v. HOWERTON *et al.*

No. 6650.    Opinion Filed March 21, 1916.

(156 Pac. 329.)

1.  **FRAUDS, STATUTE OF—Trusts—Operation of Oral Contracts—Part Performance.** The provisions of the statute of frauds or of uses and trusts have no application where the agreement has been completely performed as to the part thereof which comes within the statute, and the part remaining to be performed is merely a payment of the money, the promise to do which is not required to be in writing.

2.  **SET-OFF AND COUNTERCLAIM—Subject-Matter—Demands of One or More Parties.** Either party can plead and prove a set-off or counterclaim of the proper nature, in defense of the liability sought to be enforced by the other party, and it shall not be necessary that such set-off shall exist as between all parties plaintiff and defendant in such suit, but any party may enforce his set-off or counterclaim against the liability sought to be enforced against him.

(Syllabus by Robberts, C.)

*Error from County Court, Payne County;*
*W. H. Wilcox, Judge.*

Action by W. M. Robertson and another against Guss Howerton. From the judgment, plaintiff Robertson brings error. Reversed and remanded as to plaintiff in error, and affirmed as between defendants in error.

*Burford, Burford & Higgins,* for plaintiff in error.

*Reece & Grubbs,* for defendant in error.

Opinion by ROBBERTS, C. On and prior to March 25, 1913, Milton Thompson and W. M. Robertson, plaintiffs, owned an oil lease on the E. ½ of the S. E. ¼, section 13, township 17, range 5, Payne county. For convenience the lease had been taken and was held in the name of Thompson. On the date above mentioned they sold said lease by oral agreement to Guss Howerton, defendant, for the consideration of $400, plus one-half of the rental due thereon, which was $20, making the real consideration $420. In pursuance of this agreement Thompson made, executed, and delivered to Howerton an assignment of the lease, which was duly filed for record by him, in the office of the register of deeds of Payne county. This action was brought in the county court of that county to recover the purchase price of said lease.

1. The defendant answered: (1) By general denial; (2) a specific denial that plaintiffs sold and assigned to him the lease mentioned in plaintiffs' petition, and denies that he had any oral agreement whatever with plaintiffs for the sale and purchase of said oil lease, but alleges that he purchased the lease from the plaintiff Milton Thompson on the date mentioned, and that Thompson assigned said lease to him in writing, and the same was duly recorded as alleged; (3) the claim of plaintiffs that the lease was sold to defendant by them is solely for the purpose of a subterfuge, to prevent defendant from pleading a just claim and set-off held by him against the plaintiff Milton Thompson; (4) that Robertson is a stranger to the assignment of the lease, and has no interest in the same, and is not a party thereto; (5) that the lease is for a period of more than one year, and said instrument is in writing, and recorded in Book 1 L. R., at page 162, in the

office of the register of deeds of Payne county, a copy of which is attached hereto, marked Exhibit A, and made a part hereof.

II. Defendant further answers, and as a set-off and cross-petition against the plaintiff Milton Thompson alleges: (1) That on the 1st day of January, 1913, he was the owner of lots 1 and 2 in section 3 in township 18 north, range 5 east, Payne county, Okla., and that plaintiff Milton Thompson was the owner of lot 3 adjoining and abutting lot 2 in said section, township, and range; that on or about said date said plaintiff and defendant entered into an oral agreement to lay out and plat said lots as a town lot addition to the town of Cushing, Payne county, Okla., it being agreed and understood between plaintiff and defendant that the lots, streets, and alleys should be surveyed and platted to the best advantage through the property of each, and that, should the street running north and south near the division lines of said lots 2 and 3 fall wholly or a major part thereof on the property of either, the other should compensate him for the difference based upon the average market value or selling price of said lots abutting said street at the time said lots should be placed on sale; (2) that in pursuance of said agreement said lots were surveyed and platted, and said plat of said streets and alleys as surveyed in conformance to said agreement was properly filed and dedicated according to law by said plaintiff and defendant; (3) that said street running north and south fell wholly to the east of said division line between said lots 2 and 3, and upon the property of the defendant, that said street is 60 feet wide and ——— feet long, the half of which amounts in area to eight lots, that the average selling price of said lots abutting said street at said time was $75 per lot, amounting to $600, and that

the compensation due defendant by the plaintiff by reason of said contract is $600; (4) that defendant fully carried out and executed his part of said contract, and that plaintiff is justly indebted to defendant in the sum of $600; that said amount is due and wholly unpaid, and that plaintiff has refused and still refuses to pay same; (5) wherefore defendant prays judgment against plaintiff Milton Thompson in the sum of $600, and for costs.

For reply to defendant's answer and cross-petition the plaintiff enters a general denial, and specifically denies the alleged contract set out in the defendant's cross-petition.

The case was tried to a jury, and we gather from the briefs of both parties that the following is substantially all of the evidence directed to the controlling points in issue:

W. M. Robertson, one of the plaintiffs below, and plaintiff in error herein, testified as follows:

"Q. Did you and your coplaintiff, Mr. Milton Thompson, in the years 1912 and 1913 have any business transactions together? A. We did. Q. As a result of the business transactions between you and Mr. Thompson, tell the jury whether or not you became the owner of an oil and gas lease, or any interest therein. A. I did. Q. In the course of your dealings with Mr. Thompson did you become the owner of an interest in an oil and gas lease to the east half of the southwest quarter of section 13, township 17 north, range 5 east, in Payne county, Okla., commonly known as the McConathy lease? A. I did. Q. Tell the jury what interest you held in that lease. A. One-half interest in the lease. Q. State to the jury under what arrangements that lease was taken, if you know, that is, in whose name, and what your purpose for so doing was. A. Mr. Thompson and I had an agreement

in regard to the oil leases that we held. Some were taken in my name, and some in Mr. Thompson's name. We had an equal interest in all the leases taken. Q. For what reason were the leases taken in the name of either one of you instead of to both of you? A. It was taken for convenience, and also to save recording fees. Q. You remember whether or not the McConathy lease was taken in your name or Mr. Thompson's name? A. It was taken in Mr. Thompson's name. Q. And you owned a half interest in the lease? A. I did. Q. Have you ever received any consideration for an assignment of that lease, if it has been assigned? A. Never have. Q. Who paid for that lease? A. Mr. Thompson and myself."

Milton Thompson, one of the plaintiffs below, testified as follows:

"Q. On or about the 25th day of March, this year, were you the owner of an interest in an oil and gas lease known as the McConathy lease? A. Yes, sir. Q. Who owned another interest in that lease with you? A. Mr. Robertson. Q. That lease, under the testimony, was taken in your name? A. Yes, sir. Q. State to the jury your reasons for so doing. A. We did it for convenience, and it saved expenses in recording and transferring. Q. In handling the lease? A. Yes, sir. Q. On or about the date I mentioned, namely, the 25th of March, 1913, did you have any transactions with Mr. Howerton, the defendant in this case, relating to this lease or the assignment or the sale of it to him? A. To one-half of it. the east half of the southwest, 13-17-5, I assigned him. Q. State to the jury what your transaction was at that time with the defendant. A. Well, the agreement was this: Mr. Howerton made me a proposition. He was to give $400 for the lease if he could sell the lease or if he could make a deal he had—some kind of a trade. I don't know what it was, but he would pay me $400 for the lease if he could make his deal; and I told him, 'All right,' and he asked me to make an assignment and furnish him an abstract, and I told him I'd make an assignment, but wouldn't

furnish an abstract on a prospective deal; in selling it I had to know what it was going to be; so I saw the abstract would cost $10 to $12; I wouldn't go to the expense. He said, 'All right; you order the abstract, and, if the sale don't go through, I'll pay for the abstract; if it does, you pay for it.' I said, 'All right.' I made him an assignment of the lease and ordered the abstract, and the deal ran along for quite a bit before it was closed up. Q. In that conversation was there anything said as to who should pay the rental upon the lease? Q. Well, the deal run along for some little time before we closed it up, and finally I said— He came to me and said, 'I can make a deal,' or 'have made a deal,' something to that effect, 'with the Gypsy Oil Company;' and he said— I think he asked me to make the assignment direct to the Gypsy Oil Company; and I said, 'Mr. Howerton, the rental is due, or past due;' I said, 'That will have to be taken care of.' He said, 'I'll pay half of the rental.' Q. What was the rental on that place that was at the that time becoming due? A. The rental was $160 a year, or $40 every quarter. Q. Did Mr. Howerton ever pay you any consideration for this? If so, please state what he gave you. A. No, sir. Q. Did he ever pay you even the $1 which the contract states was paid. A. No, sir."

Cross-examination:

"Q. You say you made this transaction with Mr. Howerton? A. Yes, sir."

Plaintiffs then introduced the lease assignment and rested. The defendant introduced in evidence certified copies of the lease with the assignment thereof.

There was a large amount of testimony introduced touching the controversy between the plaintiff Thompson and defendant Howerton on the question of the set-off involved in the cross-petition, which, we take from the verdict of the jury and judgment of the court, resulted

favorably to defendant Howerton, but that is not involved here, as no appeal was taken by Thompson.

At the conclusion of the testimony the following motion was filed:

"Comes now the plaintiff W. M. Robertson, and moves the court to direct the jury to return a verdict in his favor for the sum of $210, and interest at 6 per cent. per annum from the 25th day of March, 1913, for the reason and upon the ground that the evidence offered by the defendant as to this plaintiff constitutes no defense or set-off to this plaintiff's cause of action."

—which was overruled, and exceptions saved.

The jury returned a verdict for the defendant, and judgment was rendered thereon. Motion for new trial was overruled, exceptions saved, and plaintiff W. M. Robertson brings error, making Milton Thompson a party as defendant in error.

For reversal plaintiff in error makes five assignments, only two of which are presented in his briefs, and they alone will be considered.

"(2)   That said court erred in not rendering judgment for the plaintiff in error upon the evidence introduced.

"(5)   That said court erred in submitting said cause to the jury as to the plaintiff in error, and further erred in refusing to direct the jury to return judgment for the plaintiff in error at the close of defendant's testimony."

These two assignments involve the single proposition as to whether the verdict and judgment are sustained by the evidence. We are not unmindful of the rule that, where there is any evidence reasonably tending to support the finding of the jury, it will not be disturbed on appeal; nor must we overlook that other equally important and

well-settled rule that, where there is no evidence tending to support the finding of the jury, the judgment should be reversed by the appellate court. Bearing these rules in mind, what are the facts?

There is no controversy as to who were the owners of the lease. It is practically agreed that the plaintiffs below, W. M. Robertson and Milton Thompson, each owned an undivided half interest in the lease. They both testified to that fact, and it is not disputed in any way. Howerton admits that he bought the lease for consideration of $420, caused it to be filed and recorded, and that he has not paid for it, nor any part of it, except by way of a claim consisting of a past-due indebtedness of $600 against the plaintiff Thompson, which he seeks to have set off against the purchase price. He makes no claim against plaintiff in error, but undertakes to appropriate his interest in the lease to the payment of Thompson's debt. There is no merit in the claim that he had no knowledge of Robertson's interest in the lease, and therefore is a *bona fide* purchaser without notice. His claim is not a new, present consideration, but an old, past-due indebtedness, which by a well-settled rule and long line of authorities gives him no standing as a *bona fide* purchaser. If he should pay Robertson for his interest, he would certainly be in no worse condition than he was before he attempted to appropriate it to the payment of Thompson's debt. *Logan v. Okla. Mill Co.*, 14 Okla. 402, 79 Pac. 103. Neither the contention that Robertson is estopped from claiming any interest in the lease, because he permitted it to remain in Thompson's name, nor that the statute of frauds precludes him from claiming any interest in it, because not in writing, can be sustained: First, for the reason, as before stated, that Howerton paid no new consideration,

for it; and, second, because, as stated before, this case does not come within the statute of frauds, and is in no sense governed or controlled by that statute.

As said in volume 29, Am. & Eng. Enc. L. p. 832, under title "Verbal Agreements," and the subtitle relating to lands:

"The statute of frauds has no application where the agreement has been completely performed as to the part thereof which comes within the provisions of the statute, and the part remaining to be performed is merely the payment of money or the performance of some act the promise to do which is not required to be put in writing."

It must not be forgotten that this is simply an action to recover for the purchase price of the lease—an action on an executed contract.

This court, in *Logan v. Brown*, 20 Okla. 334, 95 Pac. 441, 20 L. R. A. (N. S.) 298, speaking on this identical question, says:

"The provisions of the statute of frauds or of uses and trusts have no application where the agreement has been completely performed as to the part thereof which comes within the statute, and the part remaining to be performed is merely a payment of the money, the promise to do which is not required to be in writing."

In that case Mr. Justice Dunn, speaking for the court, clearly distinguishes the difference between actions on contracts and actions to recover the consideration for executed contracts coming within the statute of frauds. This case clearly falls within the latter class.

The question as to whether the plaintiffs below held the land as partners rather than joint owners could in no wise aid the defendant in error. If they were partners,

and owned the lease as such, the defendant could not set off his claim against one of the individual partners, in an action against him by the partners to recover a partnership debt. That rule is too well settled to require further comment. The statement of Robertson, quoted in defendant's brief, that plaintiffs were partners is simply a conclusion, and does not prove anything.

The contention of counsel for plaintiff in error that a plaintiff or defendant cannot plead an offset against one of two or more opposing parties is not well taken. Section 4746, Rev. Laws 1910, provides as follows:

" * * * Either party can plead and prove a set-off or counterclaim of the proper nature, in defense of the liability sought to be enforced by the other party, and it shall not be necessary that such set-off shall exist as between all parties plaintiff and defendant in such suit, but any party may enforce his set-off or counterclaim against the liability sought to be enforced against him."

Having the same subject under consideration, this court, in *Loeb v. Loeb*, 24 Okla. 384, 103 Pac. 570, quotes this section with approval.

The question of estoppel is not involved. If it were, to our mind the facts are sufficiently pleaded to cover that issue; but, as before stated, this is solely and simply an action to recover the consideration—in this case, the purchase price—under an executed contract. The fact that the contract was in the name of Thompson alone makes no difference under the facts admitted here.

There was no error in the admission of the lease in evidence. If so, it was immaterial, and therefore not prejudicial. Nor is there merit in the contention that parol evidence was not admissible to show that plaintiff in error

was the owner of an undivided one-half interest in the lease. The evidence was not offered nor admitted for the purpose of varying the terms of the contract, but simply to show who was entitled to the consideration agreed to be paid. Under the facts in this case, there being no question of *bona fide* or innocent purchaser, Howerton, as assignee, stands in the same relation to plaintiff in error that Thompson would occupy if the suit were against him to recover one-half the purchase price. The question of notice is not involved.

Under the facts as clearly proven, supported by that part of section 4746 above quoted, the plaintiff in error was entitled to a judgment against defendant in error Howerton in the sum of $210, with interest at 6 per cent. from the 25th day of March, 1913.

The judgment should therefore be reversed as to plaintiff in error, and the case remanded to the county court of Payne county, with directions to enter judgment against defendant in error Guss Howerton in favor of W. M. Robertson for the amount above stated, with all costs.

The judgment of the lower court is affirmed as between Thompson and Howerton.

By the Court: It is so ordered.