**LOWERRE et al. v. LUCAS et al.**

No. 14651—Opinion Filed Feb. 12, 1924.

Rehearing Denied March 18, 1924.

1. **Frauds, Statute of—Effect of Performance of Part of Contract Required to be in Writing.**

The provisions of the statute of frauds or of uses and trusts have no application when the agreement has been completely performed as to the part thereof which comes within the statute and the part remaining to be performed is merely a payment of the money, the promise to do which is not required to be in writing.

2. **Indians—Contracts Relating to Land—Purpose of Restrictions.**

Section 5 of the act of Congress of May 27, 1908, which makes illegal any attempt by a restricted Indian to deal, negotiate, contract to sell, or to incumber his restricted land without the approval of the Secretary of the Interior, was intended for the protection of the Indian and not as an aid to those dealing with him in violation of such provision, and therefore one who has dealt with a restricted Indian in violation of the terms and spirit of the act and who has received benefits through such dealing cannot invoke the provisions of the above section to defeat payment to the Indian of the amount agreed upon between the parties as the value of the benefits so received.

3. **Judgment Sustained.**

Record examined, and held, that the judgment of the trial court is sufficiently supported by the evidence.

(Syllabus by Pinkham, C.)

Commissioners' Opinion, Division No. 5.

Error from County Court, Haskell County; Omar M. Hudson, Judge.

Action by Joshua Lucas and others against George Lowerre, Jr., and Apex Coal Company. From a judgment in favor of the plaintiffs, defendants bring error. Affirmed.

Jones & Randolph, for plaintiffs in error.

Guy A. Curry and William G. Stigler, for defendants in error.

Opinion by PINKHAM, C. This action was commenced by the defendants in error against the plaintiffs in error in the county court of Haskell county.

The parties will be referred to as they appeared in the trial court.

The plaintiffs alleged in their petition that on the — day of May, 1922, the said plaintiff Oscar Cooper was the owner of certain lands, described in the petition,

underlying which was a vein of coal from two to three feet in thickness; that a short time prior thereto the said plaintiff Cooper had entered into an oral agreement with the said plaintiffs Joshua Lucas and Sid Wise, whereby the said Cooper permitted Lucas and Wise to go upon said lands and remove a portion of the coal therefrom by the process known as "stripping"; that in said agreement between said plaintiffs it was agreed that the plaintiffs Lucas and Wise would pay the said plaintiff Cooper, as royalty, at the rate of 50 cents per ton for each ton of coal mined: that after the entering into of said agreement between the said plaintiffs, Lucas and Wise went upon said land and commenced mining the same, and on the said ____ day of May, 1922, had uncovered approximately 500 tons of coal ready for removal and sale and that on the said ____ day of May, 1922, the defendant George Lowerre, Jr., in person, and the said Apex Coal Company, by the said George Lowerre, Jr., its president, entered into an agreement with the plaintiffs whereby the said defendants were to have the right to continue said mining operations and removing the coal above mentioned, and sell the same, and in consideration thereof said defendants agreed to pay to the plaintiffs the sum of $750, which was the compensation agreed upon for the labor of the plaintiffs Lucas and Wise in the mining of said coal, and the compensation due to the plaintiff Cooper for his royalty. That said agreement between the plaintiffs and defendants was oral and defendants agreed to pay the said sum of $750 some time during the month of June, not to exceed 30 days from the date of making said agreement; that said plaintiffs immediately delivered to the defendants the possession of said coal, and the defendants proceeded forthwith to mine and remove and sell said coal; that the defendants did mine and remove of said coal approximately 500 tons, worth, at the time of the making and entering into of said contract, approximately the sum of $1,500 in the condition that it was then in: that said defendants fail and refuse to pay the plaintiffs the said sum of $750 and there is due and owing from the defendants to the plaintiffs the said sum of $750, with interest thereon at the rate of six per cent. from the 15th day of June, 1922, and costs.

The defendants filed a joint demurrer to the plaintiffs' petition, which demurrer was overruled, and thereafter the said defendants filed separate answers, each consisting of a general denial and the affirmative allegation, in substance, that the verbal contract sued on related to the sale of an

interest in land, and being verbal was unenforceable because contrary to the statute of frauds; further alleging that the land upon which the strip pit operation was located was the land of Oscar Cooper, one of the plaintiffs, a full-blood Choctaw Indian; that the said land cound not be alienated under the laws of the United States nor released for mining purposes without approval of the Secretary of the Interior; that the said Oscar Cooper had, previous to the said alleged verbal agreement with defendant. leased said land to one A. H. Turner said coal mining lease having been executed in the form prescribed by the Department of the Interior, and duly approved.

The defendants allege that they acquired title to the coal in question by virtue of the departmental lease made to A. H. Turner, and not by virtue of said oral contract with the plaintiffs, and further allege that said oral contract was entirely without consideration.

The cause came regularly on for trial before the court on the 3rd day of March. 1923, on the petition and answers thus filed, a jury being expressly waived. and resulted in a judgment by the court against both defendants in the sum of $750, the amount sued for.

A determination of this cause requires an examination of but two questions presented in the brief of plaintiffs in error: First, is the statute of frauds a bar to this action? Second, was the promise on the part of the defendants to pay plaintiffs the sum of $750 without consideration?

A number of authorities are cited in the brief of defendants to the effect that an oral contract for the purchase of real estate cannot be enforced, and that minerals in place are considered "land."

The proposition that a parol contract for the sale of real esate or an interest therein is invalid cannot be disputed and the cases cited in defendants' brief are clearly in point on that proposition (Fox v. Easter, 10 Okla. 527, 62 Pac. 283; Halsell v. Renfrow, 14 Okla. 674, 78 Pac. 118; Farmers State Bank v. Cox, 41 Okla. 672, 139 Pac. 592).

It is also well settled that where the petition itself shows on its face a violation of the statute of frauds it is subject to demurrer (Crabtree v. Eufaula Cotton Seed Oil Co., 32 Okla. 465, 122 Pac. 664).

It is equally well settled that the provisions of the statute of frauds have no application where the agreement has been completely performed as to the part thereof which comes within the statute and the part remaining to be performed is merely payment of the money, a promise to do which is not required to be in writing. Robertson v. Howerton, 56 Okla. 555, 156 Pac. 329.

In the case of Logan v. Brown, 20 Okla. 334, 95 Pac. 441, it is said:

"The provisions of the statute of frauds or of uses and trusts have no application where the agreement has been completely performed as to the part thereof which comes within the statute, and the part remaining to be performed is merely a payment of the money, the promise to do which is not required to be in writing." (29 Am. & Eng. Enc. L. 832).

The petition alleges:

"That said defendants agreed to pay the plaintiffs the sum of $750, which was the compensation agreed upon for the labor. of the plaintiffs, Lucas and Wise, in the mining of said coal, and the compensation due to the plaintiff, Cooper, for his royalty."

The allegations of the petition clearly disclose that the plaintiffs, Lucas and Wise, performed labor in "stripping" some 500 tons of coal by virtue of an agreement with their coplaintiff, Cooper, and after the completion of their labor in so doing the defendants received the fruits of such labor and agreed to pay therefor the sum of $750 to the plaintiffs Cooper, Lucas, and Wise.

That part of the contract between Cooper, the owner of the land. and Lucas and Wise, who were granted the right to go upon Cooper's land and remove a seam of coal, having been performed and nothing remaining to be done except the payment of the money for the labor performed by the plaintiffs, the statute of frauds we think does not apply, and that the demurrer of the defendants to the petition of the plaintiffs was properly overruled.

The second proposition presented in the brief of plaintiffs in error is that no consideration is shown by the record for the alleged promise and that it is unenforceable.

The argument made is that the arrangement entered into between Oscar Cooper and his coplaintiffs, Lucas and Wise, wherein he granted to his coplaintiffs the right to enter upon his land and carry on a mining operation thereon without approval of the Secretary of the Interior was absolutely void, within the meaning of the act of Congress of May 27, 1908.

Section 5 of the act of Congress of May

27, 1908, which makes illegal any attempt by a restricted Indian to deal, negotiate, contract to sell, or to incumber his restricted land without the approval of the Secretary of the Interior, was intended for the protection of the Indian and not as an aid to those dealing with him in violation of such provision, and therefore one who has dealt with a restricted Indian in violation of the terms and spirit of the act and who has received benefits through such dealing cannot invoke the provisions of the above section to defeat payment to the Indian of the amount agreed upon between the parties as the value of the benefits so received.

The statute referred to has, we think, no application to the facts disclosed by the record. In this case the plaintiff Oscar Cooper is seeking to recover from the defendants the sum of money which the defendant Lowerre promised to pay for the coal produced from his own land by the labor of himself and his copartners who assisted him in the work.

In other words, the statute relied upon by the defendants to defeat the plaintiffs in this action was passed for the benefit of the restricted Indian and cannot, we think, be given such a construction as would operate to deprive these plaintiffs of the compensation which the defendant Lowerre agreed to pay them for the coal produced by their labor.

The case of Cornelius v. Murray, 31 Okla. 174, 120 Pac. 653, and the case of Combs v. Miller, 24 Okla. 576, 103 Pac. 590, as well as other authorities to the same effect, are cited in support of the defendants' contention.

These cases have been examined and are, we think, clearly inapplicable.

In each of these cases the plaintiffs were trespassers in unlawful and illegal possession of the property they sought to transfer to the defendants for a monetary consideration. They had neither right to possession nor ownership but were in illegal and unlawful possession of the property they sought to transfer in violation of a positive statute. They conveyed no property and they gave no consideration. The defendants received no benefits.

It appears that after these plaintiffs had removed the greater part of the surface from some 400 or 500 tons of coal, the defendant Lowerre, about the middle of May, 1922, entered into the agreement with the plaintiffs set out in their petition.

It further appears that prior to the making of the said agreement the plaintiff Oscar Cooper, a full-blood Choctaw Indian, had executed a coal mining lease to A. H. Turner covering a certain portion of his lands, including that upon which the said Oscar Cooper and his copartners were "stripping" some coal.

The evidence discloses that at the time of the making of the said agreement the defendant Apex Coal Company had not been formed, but that negotiations were at once entered into between A. H. Turner, the holder of the Cooper coal lease, and the defendant Lowerre, for the purchase and assignment of the Turner lease, and that at that time the defendant Lowerre was informed that he, Turner, had allowed Wise and Lucas (plaintiffs herein) to take out coal on the land in question. The defendant Lowerre testified that he talked to Wise with reference to same and asked him "what he wanted to turn it over to us for."

There is evidence to the effect that at the time of the agreement between the defendant Lowerre and plaintiffs, the said Lowerre was also negotiating for the purchase of the Turner lease on Cooper's land: that he procured the consent of the plaintiff Cooper to the assignment of the Turner lease, and the further consent of Cooper that the royalty on the coal produced under the Turner lease should be reduced from 50 cents per ton as provided in the Turner lease to 25 cents per ton.

It further appears that the defendant, Lowerre also procured an assignment of another coal lease made by the wife of the plaintiff Lucas to Turner, covering her allotted lands as a full-blood Choctaw Indian, and procured the consent of plaintiff Lucas and his wife to a similar reduction of the royalty from 50 cents to 25 cents per ton.

At about the time of these transactions the defendant Apex Coal Company was organized by the defendant Lowerre, which company took over the plaintiffs' "stripping" operations, and the coal which had been uncovered by the labor of the plaintiffs, consisting, as before stated, of some 400 or 500 tons.

From the facts and circumstances disclosed by the record it is clear that the benefits which the defendants derived from the agreement entered into between the defendant Lowerre and the plaintiffs in May, 1922, constituted a sufficient consideration for the promise of the said Lowerre to pay $750 for the coal, which the evidence shows without dispute the plaintiffs delivered to the defendants, which coal they received and sold.

It is urged by defendants in their brief that the judgment should be reversed as to both defendants, but especially as to the defendant Lowerre, because, it is contended, there is no evidence that the coal was delivered to or received by him.

It is sufficient to say that the defendant Lowerre admits this agreement as to the purchase of the coal in question from the plaintiffs and that the Apex Coal Company took possession of the same.

We think the judgment of the trial court should be affirmed.

By the Court: It is so ordered.