## PURCELL v. CORDER *et al.*

### No. 1732.   Opinion Filed May 14, 1912.

#### (124 Pac. 457.)

1.    **PLEADING—Waiver of Objections—Departure.** Although the allegations of a reply may constitute a departure, yet the question of such departure cannot be taken advantage of by demurrer or objection to the introduction of evidence. The defendant, having failed to move to strike the reply on such ground, and going to trial on the issues thus framed, waived such defect.

2.    **TRUSTS—Express Trusts—Validity of Oral Trust.** A pleading that is sufficient to withstand a demurrer under the statute of frauds is also sufficient under the statute of uses and trusts (section 7267, Comp. Laws 1909; section 4186, St. Okla. 1890).

3.    **PLEADING—Demurrer—Admissions.** Although a demurrer admits the facts of a petition, the agreement being in parol, the defendant is entitled to the benefit of the statute of frauds, unless the part performance, which is set out therein to avoid its operation, is of a character to have that legal effect. The demurrer admits the parol agreement, and insists that it is not such a parol agreement as will avoid the operation of the statute, and deprive the defendant of the benefit of it as a defense.

4.    **SAME—Demurrer—Admissions.** A defendant may answer and admit a parol agreement, but if, at the same time, he insists on the protection of the statute, no decree can be made against him merely on the ground of the admission of the agreement. A demurrer is, in effect, the same as an answer which admits the parol agreement, but claims the benfit of the statute. It admits the agreement, but denies the right of the complainant to enforce it.

5.    **SAME.** If the petition alleges such a part performance as will take the agreement out of the statute, the demurrer is such an admission of the part performance as will preclude the defendant from the benefit of the statute. The petition must state the facts which are relied upon as part performance. When the facts are admitted by the demurrer, the court must determine whether the facts relied upon constitute a part performance.

6.    **SPECIFIC PERFORMANCE—Frauds, Statute of—Operation of Statute—Performance by Plaintiff—Validity of Parol Trust.** E. C., the wife of W. C., held one-half of a certain 80 acres of land in trust for him. W. C. and his daughter, M. P. (plaintiff in error), agreed in parol with E. C., who was the stepmother of M. P., that the said W. C. should convey the other half of said 80 acres of land to E. C.; that M. P. should contribute and assist in the support of said W. C. and E. C. during their natural lives; that E. C. should have the use and rents and profits from said land during

her natural life, and at her death M. P. should own the same, and that E. C. would execute in due time the proper instrument to effectuate the intention. E. C. died without executing a will or deed to that effect; in fact, executed no will or instrument whatever in favor of any one relative to said land. M. P. executed or completed her part of the contract by making contributions toward the support of her father and stepmother. **Held,** that M. P. may sustain a suit in equity upon such parol agreement after such performance for a specific performance of the contract against the other heirs.

(a) The complete performance of said contract on the part of the party seeking to avail herself of its benefits took the case out of the operation of the statute of frauds.

(b) Such a performance as would take the case out of the operation of the statute of frauds would also take it out of the inhibitions of the statutes of uses and trusts. (Section 7267, Comp. Laws 1909; section 4186, St. Okla. 1890.)

(Syllabus by the Court.)

*Error from District Court, Pawnee County;*
*L. M. Poe, Judge.*

Action by May Purcell against Henry Corder and others. Judgment for defendants, and plaintiff brings error. Reversed, with instructions to grant a new trial.

*Biddison & Eagleton,* for plaintiff in error.

*George E. Merritt,* for defendants in error.

WILLIAMS, J. On December 29, 1908, plaintiff in error, as plaintiff, commenced an action against the defendants in error, as defendants, alleging that she was the owner of and in the actual possession of a certain 80 acres of land in Pawnee county. The defendants answered that the title of said land was in Eliza Craft at the time of her death, which occurred on November 26, 1908; that the said Eliza Craft left as her sole and only heirs the defendants and certain others; that, by reason of said inheritance, said defendants were the owners in fee of an undivided four-sixths interest in and to said land; the plaintiff being the owner of an undivided two-sixths interest therein. Plaintiff replied by general denial, and further averred that she was the daughter of William Craft and the stepdaughter of Eliza Craft, both of whom were dead; that it was by the means of

William Craft that said land was purchased, though the deed was made to William Craft and Eliza Craft jointly; that it was without consideration so far as Eliza Craft was concerned; that it was for the use and benefit of the said William Craft, the said Eliza Craft holding an undivided one-half interest in and to said premises as trustee for the use and benefit of the said William Craft.

Plaintiff further averred that she had contributed large sums of money for the support of the said William Craft and Eliza Craft, and continued said contributions for a long time after the death of the said William Craft and up to the death of the said Eliza Craft, and that a contract and agreement was made and entered into by and between William Craft, Eliza Craft, and the plaintiff that the said Eliza Craft should have the use and benefit of the said land during her life, and that plaintiff should have and own the land after the death of the said Eliza Craft; that the said William Craft carried out and executed his part of the contract by deeding said land to Eliza Craft, but did so without consideration therefor, except the promise from Eliza Craft that she would arrange the matter so the plaintiff in error could and would have said land after her death; that plaintiff ratified and joined in said contract, but the said Eliza Craft, though promising to do so, failed to make either a deed or a will carrying out her part of said contract; that the said Eliza Craft had the use and control of said land during her life and enjoyed the rents and profits thereof; that the said William Craft, Eliza Craft, and the plaintiff made said agreement in good faith, and that, when the said Eliza Craft enjoyed the use and profits of said land during her life, it became an executed contract or agreement between said parties, said agreement being in parol. Defendants having filed a demurrer to said amended reply, same was sustained; exceptions being saved. Plaintiff electing to stand on her pleadings, the court dismissed said action, and rendered judgment against the plaintiff in error. This proceeding is to review said judgment. The grounds of demurrer were (1) that the reply was a departure from the petition; and (2) that the reply did not state facts sufficient to constitute a cause of action.

The question of the reply constituting a departure could not be raised by demurrer. *St. Paul Fire & Marine Ins. Co. v. Mountain Park Stock Farm Co.*, 23 Okla. 79, 99 Pac. 647. The defendants, having failed to move to strike the reply on the ground that it constituted a departure, waived such defect, if any. *St. Paul Fire & Marine Ins. Co. v. Mountain Park Stock Farm Co., supra; Wey et al. v. City Bank of Hobart et al.*, 29 Okla. 313, 116 Pac. 943.

In *Logan v. Brown*, 20 Okla. 334, 95 Pac. 441, 20 L. R. A. (N. S.) 298, it is said:

"The third proposition raised by the defendant is one most insistently argued and contended for both under the allegations of the demurrer and under the proof offered in the case, and the statute invoked is section 64, art. 4, c. 65, Wilson's Rev. & Ann. St. 1903, under the title of 'Uses and Trusts,' which provides as follows: 'No trust in relation to real property is valid, unless created or declared: First: By a written instrument, subscribed by the trustee (trustor) or by his agent thereto authorized by writing. Second: By the instrument under which the trustee claims the estate affected; or Third: By operation of law.' If the petition was good against the demurrer under the statute of frauds, it was also good under the provisions of the statute of uses and trusts. The former statute provides that the contract shall be invalid, and the latter statute provides that no trust in relation to real property is valid unless in writing; but the statute last referred to provides, in addition thereto, 'unless created or declared by operation of law.' Under this last provision, the courts have exercised very broad discretion in excepting and taking out of the operation of the statute many cases where accident, fraud, or mistake have intervened, and where it would be inequitable to allow the grantee to retain real property, title to which had been procured under a verbal promise. So that the demurrer must of necessity be overruled for the reason that the petition is not vulnerable owing to any of the deficiencies mentioned appearing on its face, as well as appearing that it is not a suit to enforce an unwritten trust in relation to real property."

In *Spangler et al. v. Yarborough*, 23 Okla. 806, 101 Pac. 1107, 138 Am. St. Rep. 856, the court canceled the deed on the ground of fraudulent intention at the inception of the contract. See, also, *Halsell et al. v. Renfrow et al.*, 14 Okla. 674, 78 Pac.

118, 2 Ann. Cas. 286, and *McCoy v. McCoy*, 30 Okla. 379, 121 Pac. 176.

The wife originally held an undivided one-half of said 80-acre tract in trust for the husband. Section 7268, Comp. Laws 1909; section 4187, St. Okla. 1890; *Ingham v. Burnell et al.*, 31 Kan. 333, 2 Pac. 804. The deed to said 80 acres of land was made to William Craft and Eliza Craft jointly; the said William Craft paying the money. The allegations in the record are that Eliza Craft held "an undivided one-half interest in and to said premises as trustee for the use and benefit of the said William Craft." It is further averred that the plaintiff in error, May Purcell, contributed large sums of money for the support of the said William Craft and Eliza Craft, and continued said contributions for a long time after the death of the said William Craft, and up to the death of the said Eliza Craft, and that, under the verbal agreement made between the said William Craft, Eliza Craft, and the said May Purcell, the said Eliza Craft was to have the use and benefit of all of said land during her life, the said William Craft conveying the other undivided one-half to the said Eliza Craft pursuant to said agreement; that said contract was entirely performed on the part of the plaintiff in error and her father, William Craft, but that Eliza Craft died without executing the will or deed to comply with the contract on her part. In *Gupton et al. v. Gupton et al.*, 47 Mo. 37, it is said:

"That an agreement to dispose of property by will in a particular way, if made on a sufficient consideration, is valid and binding, is settled in this state by *Wright v. Tinsley*, 30 Mo. 389, where the subject is considered at length and the authorities reviewed. The statute of frauds is set up as a defense, inasmuch as the original agreement was not made in writing. But this defense will not avail for the obvious reason that the contract was in a great measure performed by both parties. The plaintiffs took Mr. and Mrs. Barnett to their house, and provided for them until they left. * * * Contracts like the one under consideration have been before the courts, and have uniformly been held to be valid when partially performed, and when the refusal to complete them would work a fraud upon the other party. * * * The cases of *Van Dyne v. Vreeland*, 11 N. J. Eq. 370,

and *Davison v. Davison,* 13 N. J. Eq. 246, were both very similar to the present, and the verbal promises of the owners of the property were enforced for the reason that the services and support contracted for had been rendered."

In *Sutton et al. v. Hayden et al.,* 62 Mo. 101, it is said:

"Ordinarily it is the case that the remedial justice of a court of equity as administered by a decree for specific performance is invoked where the agreement respects land, and where such agreement in any other forum would be held void, as in contravention of the statute of frauds. But the jurisdiction of courts of equity is by no means circumscribed within such narrow boundaries. That beneficent jurisdiction is called into activity on numerous other occasions, where, but for its timely exercise, there would be either a partial or else an entire failure of justice. * * * In *Goilmere v. Battison,* 1 Vern. 48, the tenant in possession agreed with the heir at law, who had threatened to evict her, that, if she died without issue of her body, she would either give him £2,500, or leave him her land. She failed in any way to comply with her agreement, and died, having bequeathed her land to her second husband, who took without notice. Yet on bill brought by the heir at law the agreement was enforced against the husband. So, also, a contract to make mutual wills will be enforced if one of the parties has died, having made a will in conformity with the contract, and the survivor has enjoyed the benefit of the will thus made. Story Eq. Jur., sec. 785; *Dufour v. Periera,* cited in *Walpole v. Oxford,* 3 Ves., Jr., 412; Newl. on Contr., c. 6, p. 111; *Hinkly v. Simmonds,* 4 Ves., Jr., 160. And the fact that a will is ambulatory until the death of the testator does not all prevent the prevalence of the equitable rule which the above authorities enunciate; for it is competent for a person to bind his assets by his agreement, and his will in such case is the trustee for the performance of that which he has contracted. In the case at bar the same principle as above asserted seems to be clearly applicable. Nor is it regarded as any substantial obstacle to the relief sought that the mode whereby the property was to be transferred was not specified. The intention to transfer the property was the chief thing. The method by which the intended result was to be attained was wholly immaterial. The contract entered into might well have been discharged by deed or will. Fry. Spec. Perf. sec. 678; *Barkweather v. Young,* 4 Drew, 1. In the case last cited, where A. on marriage of his daughter with B. agreed to leave his daughter an equal portion with his other children, and the

daughter having died during the lifetime of her father, leaving children, it was argued this circumstance operated as a discharge of the agreement by the act of God. But the vice chancellor ruled otherwise, holding that the agreement might have been performed in two ways, either by A. making provision for his daughter by will, or by his dying intestate; and, though the death of the daughter precluded performance in the first way, this should not exonerate the father from performance in the second, since it was at his option, his intention being clear to do a certain thing, to adopt one or the other of two modes. In *Rhodes v. Rhodes,* 3 Sandf. c. [N. Y.] 279, a similar objection met with a like fate. That case very nearly resembles the one before us. There two brothers owned a farm in common, as well as stock, farming utensils, etc. One of the brothers, becoming by reason of epileptic fits incapacitated for labor, and requiring constant attention, agreed with his brother, on condition of receiving the proper support, care, and attention, that the latter should be compensated with all his property, both real and personal. This agreement having been faithfully complied with, it was held that the objection was not tenable that the agreement was mere parol. And it was further held that the services there contracted for could not and were not intended to be compensated for in money, and, in short, were incapable of computation by any pecuniary standard. Browne, Stat. Fr., sec. 463, cas. cit. The same remarks will apply with equal force here."

See to the same effect, in support of the right of specific performance as to wills, *Mundorff et ux. v. Kilbourn et al.,* 4 Md. 459.

In *Johnson v. Hubbel,* 10 N. J. Eq. 332, 66 Am. Dec. 773, it is said:

"It may be unwise for a man in this way to embarrass himself as to the final disposition of his property, but he is the disposer by law, of his own fortune, and the sole and best judge as to the time and manner of disposing of it. A court of equity will decree the specific performance of such an agreement upon the recognized principles by which it is governed in the exercise of this branch of its jurisdiction. In the case of *Rivers v. Executors of Rivers,* 3 Desaus. [S. C.] 195 [4 Am. Dec. 609], the court in sustaining the propriety of a court of equity's recognizing and enforcing such an agreement very properly remarked that a man might renounce every power, benefit, or right which the law gives him, and he will be bound by his agreement to do

so, provided the agreement be entered into fairly, without surprise, imposition, or fraud, and that it be reasonable and moral. In *Izard v. Executor of Izard,* 1 Desaus. [S. C.] 116, there is a note to the case in which most of the old authorities bearing upon this subject are collected. There are two classes of authorities there collected, one of which relates to the subject of agreements by two parties to make mutual wills in favor of each other on certain contingencies; and the other, in which courts of equity have decreed the specific performance of agreements connected with the testamentary or other settlements. In addition to the cases cited in this note, I would refer to the case of *Lord Walpole v. Lord Oxford,* 3 Ves. 402, and the same case in 7 D. & E. 138, and *Lewis v. Maddocks,* 6 Ves., Jr., 150, *Fortescue v. Hannah,* 19 Ves. 71, and a note in which a report of the case of *Jones et ux. v. Martin,* 3 Anst. 882, is given at length. *Podmore v. Gunning,* 9 Sim. 644; *Moorhouse v. Colvin,* 9 E. L. & E. Rep. 136. * * * Several objections are made to the court's decreeing a specific performance in this case, in addition to the general one which I have considered. It is said that this agreement was in parol, and is therefore contrary to the statute of frauds. But although this agreement was a mere parol one, if there was a part performance of it, of such a character as, upon the principles recognized and acted upon by this court, will take a parol agreement out of the statute, then there is nothing peculiar about an agreement of this kind to exclude it from the operation of those principles. If one party to a parol agreement has wholly or partially performed it on his part, so that its nonfulfillment by the other party is a fraud, the court will compel a performance. In this case the son performed his part of the agreement. He paid a valuable consideration, and parted with his property. In fact, everything was done and performed by both parties that the character of the transaction would admit of. The part of the agreement which the son was to perform was to be performed *in praesenti,* and that part to be performed by the father was to be performed *in futuro.* There is no uncertainty about the agreement in the slightest respect. It is definite and certain in every particular. It is specifically set out by the complainant in his bill, and the agreement, as alleged, is admitted by the demurrer. There is no objection to a decree on the ground of the contract not being in writing."

In *Van Dyne v. Vreeland,* 11 N. J. Eq. 370, the facts are substantially the same as in the case at bar. In the opinion by the chancellor, it is said:

"The agreement upon which the bill is founded was in parol, but its performance, or part performance, is set up to avoid the statute. Although the demurrer admits the facts of the bill, the agreement being in parol, the defendant is entitled to the benefit of the statute, unless the part performance, which is set up to avoid its operation, is of a character to have that legal effect. The demurrer admits the parol agreement, and insists that it is not such a parol agreement as will take the case out of the operation of the statute of frauds, and deprive the defendant of the benefit of it as a defense. A defendant may answer and admit the parol agreement; but, if at the same time he insists on the protection of the statute, no decree can be made against him merely on the ground of the admission of the agreement. A demurrer is in effect the same as an answer which admits the parol agreement, but claims the benefit of the statute. It admits the agreement, but denies the right of the complainant to enforce it. But, if the bill alleges such a part performance as will take the agreement out of the statute, the demurrer is such an admission of the part performance as will preclude the defendant from the benefit of the statute. The bill must state the facts which are relied upon as part performance. When the facts are admitted by the demurrer, the court must determine whether the facts relied upon do constitute part performance. In this case, if the agreement, which is the ground of the bill, is of such a character as could be enforced by either party if it were in writing, then, I think, there can be no doubt but that there has been such a part performance in this case by the complainant as will take the agreement out of the operation of the statute."

In *Davison v. Davison*, 13 N. J. Eq. 246, it was held:

"A father made a verbal agreement with his youngest son that if he would remain and work his farm, and support and maintain him during his life, that upon his death the son should have the farm. The son remained and worked the farm for upwards of fifteen years, to the satisfaction of the father, who then, becoming displeased with him, conveyed the farm to his other two sons, in consideration of maintenance for life. *Held,* that as it appeared that the complainant's services were rendered to his father not gratuitously, but upon a distinct understanding between himself and his father that he should be compensated for his services, and that the material part of that agreement was that upon his father's death, provided he continued to serve and provide for him during his life, he should receive the homestead farm, that the agreement thus proved was valid in law;

that part performance took the case out of the operation of the statute of frauds."

See, also, Fry on Specific Performance, 1884, sec. 223.

The judgment of the lower court is reversed, with instructions to grant a new trial and proceed in accordance with this opinion.

TURNER, C. J., and HAYES, KANE, and DUNN, JJ., concur.