**BEGLEY et al. v. BEAVERS.**

No. 13752—Opinion Filed Sept. 30, 1924.

Rehearing Denied Nov. 1, 1924.

1. **Appeal and Error— Presumptions—That Contract Pleaded was Written.**

Where the petition fails to show whether the contract in suit was oral or in writing, it will be presumed to have been in writing for all the purposes of a demurrer.

2. **Trusts—Constructive Trust—Conveyance to Maintain Action.**

Where it became necessary for the mother and daughter, who were living together in friendly and intimate relations, to begin suit to quiet title to land in which each

owned an undivided one-half interest, and the mother, not desiring to be a party to the suit because it was necessary to make her step-children parties, and because she was uneducated and did not feel capable of looking after the suit and caring for the property, without any agreement to reconvey, conveyed the land to the daughter to enable the daughter to maintain the suit in her own name, a trust was created by operation of law.

(Syllabus by Ray, C.)

Commissioners' Opinion, Division No. 1.

Error from District Court, Pawnee County; Redmond S. Cole, Judge.

Action by Minerva E. Beavers against Nannie Begley and Walter L. Begley. Judgment for plaintiff, and defendants appeal. Affirmed.

Wilcox & Swank, for plaintiffs in error.

David C. Lee, for defendant in error.

Opinion by RAY, C. This suit is to have a quitclaim deed, previously executed from plaintiff to defendant, conveying a one-half interest in certain land, to be decreed a conveyance in trust, and for a reconveyance and an accounting of the rents and profits. From a judgment in favor of the plaintiff the defendant has appealed. The various assignments of error are presented under two propositions:

(1) An express trust in lands must be proved by writing.

(2) The judgment of the court is not supported by the evidence but is contrary to the clear weight of the evidence.

Under the first proposition it is urged that the court erred in overruling defendant's demurrer to plaintiff's petition. It is contended that the petition fails to state a cause of action for the reason that plaintiff seeks to have a trust decreed upon a contract which the statutes of uses and trusts require to be in writing. An examination of the petition fails to disclose whether the agreement or contract alleged was oral or in writing. We think the demurrer was properly overruled. No motion was lodged to require the plaintiff to be more specific by stating whether the contract was oral or in writing, and. in the absence of such motion, the defendant cannot complain that the petition was not made more specific.

In Logan v. Brown, 20 Okla. 334, 95 Pac. 441, in the body of the opinion, page 342, Justice Dunn said:

"* * * The rule seems to be that, 'if the complaint fails to show whether the contract in suit was verbal or in writing it will be pre-

sumed to have been in writing for all the purposes of the demurrer.' Miles v. Thorne, 38 Cal. 335, 99 Am. Dec. 384 ; Broder v. Conklin, 77 Cal. 330, 19 Pac. 513 ; 20 Cyc. 308, and cases cited. Hence the demurrer cannot be sustained on this ground"

—and on the following page:

"If the petition was good ground against the demurrer under the statute of frauds, it was also good under the provisions of the statute of uses and trusts."

In Purcell v. Corder et al., 33 Okla. 68, 124 Pac. 457, in the syllabus it is said:

"A pleading that is sufficient to withstand the demurrer under the statute of frauds is also sufficient under the statute of uses and trusts."

While the evidence was conflicting in some particulars we think the judgment was not contrary to the weight of the evidence but was sustained by it. Minerva E. Beavers, defendant in error, plaintiff below, is the mother of Nannie Begley, formerly Nannie Beavers. The husband of Minerva Beavers and father of Nannie Beavers, now Nannie Begley, being in difficult financial circumstances, some three or four years before his death, conveyed to Nannie Begley a house and lot in Yale of the value of about $600. The evidence is not clear, and it is not material, whether a consideration was paid therefor. Prior to his death he conveyed to the mother and daughter 120 acres of land, to each an undivided one-half interest, being the land here in controversy. After his death all of his property with the exception of the house and lot referred to and the 120 acres here in controversy, went to the satisfaction of his creditors. Soon after the death of the husband and father it became necessary for the mother and daughter to bring a suit to quiet the title to the 120 acres of land. Mrs. Beavers was unwilling to become a party to the suit for the reason that she did not desire to be a party plaintiff against her stepchildren and for the further reason that she was uneducated and did not feel capable of looking after the suit and taking care of the property. While the testimony of the plaintiff was meager as to the circumstances surrounding the transaction, and as to the reasons for executing the quitclaim deed to her daughter, and the daughter testified that in consideration for the deed she conveyed to her mother the house and lot above referred to, we think the transaction is made clear by the testimony of the attorney who brought the suit to quiet title and on whose advice they acted. He testified :

"Grandma Beavers expressed an undesire to be a party to a suit against the other chil-

dren or she didn't want to take that position. As I' remember that was her attitude. The matter was discussed further and she stated that she was not in a position to look after the matter as well as it should be. There was a mortgage on the place and that her daughter then, as I remember, had been through school and had an education and would be able to look after it better than she would and that she would rather turn the place so far as handling it was concerned, to her daughter. I think I asked them then if it was agreeable for the daughter to take the place and grandma suggested it was agreeable to her and Miss Nannie suggested it was agreeable to her to handle it that way. After we discussed it there—I am just giving the substance as I remember the conversation, I would not attempt to relate the conversation in detail—after that was done, I think after that discussion was made I advised the parties it would be made—a quitclaim deed could be made by grandma to her daughter and let her daughter bring suit to quiet title in her own name. As I remember the quitclaim deed was not prepared at that time. It seems to me that I prepared the deed and sent it to them and it was sent from our office to them wherever they were living at that time. * * *

"As I remember that part of the conversation it was about like this, she and her daughter were making their home together and they had—she liked her daughter and her daughter liked her and they were getting along nicely and so far, as where the title of the land was concerned it made very little difference to them, they intended to stay together and the daughter was to be with the mother and the mother with the daughter. That is my recollection on that particular phase of it. * * *

"I don't think there was any direct statement made any further than the substance as I have given you there: that it was a matter of little concern whether the title was in the daughter or whether the title was in Mrs. Beavers or whether it was in both so far as their respective selves were concerned. They were living together and intended to continue so. I want to correct or make this additional statement. I can't mean to infer from that that there was anything said by Miss Nannie Beavers at that time that she would quitclaim any of her rights to her mother."

The house and lot were conveyed by the daughter to the mother two years after the mother deeded the land to her. The title to the land was quieted in the daughter, and she has had control of it since it was deeded to her. It was first rented for agricultural purposes, afterwards leased for oil and gas, and finally one-half of the royalty was sold for $6,000.

A great number of authorities are cited and relied on by plaintiff in error unneces-

sary to review. They sustain the contention that no trust in relation to real property resting upon contract is valid unless in writing. But that is not this case. Here the trust is created by operation of law. True, it is alleged in the petition that the daughter agreed to reconvey, but the proof does not sustain that allegation. The evidence does not show that there was any agreement to reconvey, either oral or in writing. The proof shows the intimate and confidential relations of the parties, and facts and circumstances surrounding the transaction which create a trust by operation of law. It may be said there is a variance between the allegations and the proof, but no objection was urged in the trial court or here upon that ground, and, under section 312, Comp. Stat. 1921, the pleading will be deemed to have been amended to conform to the proof.

The Kansas statute on uses and trusts is similar to our own. In the case of Lehrling v. Lehrling (Kan.) 115 Pac. 556, that court used language and quoted authorities applicable here:

"The appellants rely upon the provisions of the statute requiring that express trusts shall be shown by writing, and insist that the letter is insufficient to meet the statutory requirement. The letter and deed, however, in connection with all the circumstances, are sufficient to show a trust by implication of law. The appellants having asked for the conveyance for the purposes stated in their letter, and their request having been complied with, a trust may fairly be implied to hold the legal title for the purposes named. A trust arising by implication of law is excepted from the statutory rule requiring a writing signed by the party creating a trust. Gen. St. 1909, par. 9694.

" 'Implied trusts are those that arise when trusts are not directly or expressly declared in terms: but the courts, from the whole transaction and the words used, imply or infer that it was the intention of the parties to create a trust. Courts seek for the intention of the parties, however informal or obscure the language may be; and, if a trust can fairly be implied from the language used as the intention of the parties the intention will be executed through the medium of a trust.' 1 Perry on Trusts (5th Ed.) par. 112.

"Trusts are often declared in transactions between persons standing in confidential relations, as parent and child, that would not be implied between strangers. Koefoed v. Thompson, 73 Neb. 128, 102 N. W. 268; De Mallagh v. DeMallagh, 77 Cal. 126, 19 Pac. 256; note, 115 Am. St. Rep. 793."

The judgment should be affirmed.

By the Court: It is so ordered.