# KELLY *et al.* v. WEST.

No. 3549. Opinion Filed April 13, 1915.

Rehearing Denied June 22, 1915.

(149 Pac. 902.)

1. **JUDGMENT—Sufficiency—Reference to Recommendations of Referee.** The language of the decree is sufficient, considered in connection with the recommendations of the referee, which were confirmed by the court, to set aside the contract attacked in the petition.

2. **REFERENCE—Oath of Referee—Sufficiency—Waiver.** A substantial compliance with the statute, requiring a referee to qualify by taking an oath "truthfully to hear and examine the cause, and to make a just and true report therein," etc., is sufficient; and even a failure to take the oath will be deemed to have been waived, where the parties proceed to trial and submit their case without an objection on the specific point.

3. **SAME—Power of Referee—Implied Stipulation.** Litigants may stipulate that the referee shall settle the issues in a cause referred to him; and where a litigant joins in a motion asking for a reference, and that a particular person be appointed referee, and that he be clothed with such power, and later by filing supplemental pleadings, calls forth and avails himself of the exercise of such power, such actions are equivalent to a stipulation that it be exercised.

4. **APPEAL AND ERROR—Harmless Error—Irregularities.** Irregularities, not affecting the substantial rights of the parties, will not cause the reversal of a decree which fairly settles and adjusts the equities between the parties.

(Syllabus by Brewer, C.)

*Error from District Court, Osage County;*
*R. H. Hudson, Judge.*

Action by John West against Chris L. Kelly and another. Judgment for plaintiff, and defendants bring error. Affirmed.

*Grinstead, Mason & Scott,* for plaintiffs in error.

*Chas. M. Cope, Leahy & McDonald,* and *J. P. O'Meara,* for defendant in error.

Opinion by BREWER, C.   West, the defendant in error, and Kelly, one of plaintiffs in error, on July 5, 1905, entered into a verbal contract of copartnership, and thereunder conducted a general merchandise business at Hominy, Okla., until October 30, 1909.   Kelly lived at Hominy and had at all times full and complete charge, management, and control of the business and kept the books and accounts thereof.   West lived elsewhere and visited the business only occasionally for short periods. October 30, 1909, the partners having become seriously estranged, West bought Kelly's interest in the business for a consideration of $3,000 and assumed the indebtedness of the firm, which Kelly represented did not exceed $1,600.   The contract by which Kelly's interest was acquired was, in the main, verbal; but, with regard to the amount of the indebtedness, it was agreed in writing that Kelly should deposit $500 of the purchase price in a bank, out of which any indebtedness in excess of $1,600, if such should be found to exist, should be paid, but, if none such was discovered within a limited time, the $500 should be paid over to Kelly.   Within a short time afterwards, West found out that the firm's indebtedness was in excess of $6,000; that the stock of merchandise, represented by Kelly to be of the approximate value of $8,000, was less than $6,000; and thereupon West brought this suit to set aside the contract under which Kelly's interest was acquired, on the ground of fraud and deceit, in falsely representing the amount of stock and of indebtedness, etc.   The petition also charges that large profits had been made in

the conduct of the business and had not been accounted for, together with other acts of malfeasance, mismanagement, and bad faith, not necessary to particularize. The petition also charges that Kelly, while in control of the business, had used the firm's funds in the acquisition of a residence property, and had taken title to same wrongfully in his own name; and that, after the disclosures as to the status of the business, Kelly and his wife had conspired with the plaintiff in error Sutherland to pass the title to said property to him for a pretended consideration, for the purpose of defrauding, cheating, and hindering West in obtaining his just dues from Kelly. The petition prays, in substance, that the contract for the purchase of Kelly's interest be set aside; that Kelly be required to account for the partnership assets and funds; for judgment against Kelly, and for a decree canceling the deed from Kelly to Sutherland to the residence property; that said property be declared to be the property of the firm; and that same was held in trust for said firm.

Answers were filed by both Kelly and Sutherland, raising an issue as to practically all points of the petition and asserting some new matters; but we think it unnecessary to go into the details of the pleading. After the issues were fully made up, the parties in open court filed the following motion:

"Come now plaintiff and defendants and move the court to appoint Tom George, of Bartlesville, as referee in this case, with power to settle issues, subpœna and swear witnesses, and make findings of fact and conclusions of law."

The order of reference was made by the court, and the referee, after hearing the evidence offered, made and returned into court his report, from which we set out, for

the purpose of giving a better understanding of the case, the following excerpts:

"(1)    West and Kelly entered into said copartnership on the 5th day of July, 1905, under a verbal agreement.

"(2)    That plaintiff contributed $1,000 in cash to said partnership, and Kelly $500. That plaintiff also contributed $500, which was to be repaid by Kelly with interest thereon at one per cent. a month until paid.

"(3)    That it was agreed that until said $500 was repaid with interest at one per cent. a month plaintiff should have a three-fourths interest in said business and Kelly a one-fourth interest therein.

"(4)    That Kelly was to devote his entire time to said business and receive $40 per month for his services.

"(5)    That said business was carried on from on or about July 5, 1905, to October 30, 1909, in the name of West & Kelly.

"(6)    That shortly before October 30, 1909, differences of opinion arose between the parties over said business, and dissolution arrangements were conducted through third persons.

"(7)    That on the 30th day of October, 1909, said parties entered into a written agreement, as follows: '* * * Witnesseth, that, whereas, C. L. Kelly has this day sold to John West, party of the second part, all his interest and right in the assets and good will of the firm of West and Kelly; and whereas the interest of Chris L. Kelly was purchased with the understanding and agreement that the liabilities of the firm did not exceed the sum of sixteen hundred dollars; and whereas, the said Chris L. Kelly has deposited with the Bank of Commerce, of Hominy, Oklahoma, the sum of five hundred dollars to pay one-half of the excess of the liabilities of the firm of West and Kelly over the aforesaid sum of sixteen hundred dollars: Now therefore, I, Chris L. Kelly, do hereby authorize Geo. F. Andrews, to inspect and audit the liabilities of the firm, and if he finds that said liabilities

exceed the amount of sixteen hundred dollars, then he is authorized to pay to John West, out of the funds in the hands of the Bank of Commerce, one-half of such excess. Said amount, if any, to be determined within sixty days, and if no such liability appear by the end of sixty days, then the said Geo. F. Andrews is hereby authorized to pay the aforementioned five hundred dollars over to the said Chris L. Kelly.' * * *

"(11) To induce plaintiff to sign said written agreement, Kelly, knowingly, falsely, and fraudulently, and with intent to cheat and defraud plaintiff, told plaintiff that said stock of merchandise was of the value of $8,000, bills receivable, $2,400, or $2,500, and said copartnership was indebted not exceeding $1,600. That at said time said stock of merchandise did not exceed in value $5,598.17, bills receivable amounted only to $1,927.36, and said copartnership was indebted in the sum of $6,017.60.

"(12) That plaintiff did not know, or had no means of knowing, that said statements were false, as found herein, until the invoice of said merchandise and notices received from creditors as to bills payable and an investigation as to bills receivable, for the reason that the books did not disclose the condition as to such matters.

"(13) In December, 1907, Kelly purchased and paid for same by check of said copartnership, north 25 feet of lot 13 and lot 14, block 18, Hominy, and took title in his own name without the knowledge or consent of plaintiff. * * *

"(15) Kelly paid out by copartnership checks at least $380.75 in erecting buildings and otherwise improving said real estate.

"(16) The buildings and improvements were placed upon said real estate with funds of said copartnership, except the funds obtained upon said mortgage.

"(17) Kelly drew other checks in the name of said copartnership and applied the proceeds to his individual use, amounting to at least $496.55, which he did not charge to himself and which was not in payment of any sum due him as salary.

"(18)   That West put into said business, in addition to amounts heretofore found, about $6,000 paid in settlement of merchandise accounts; the sum of $650 rents due him on building.

"(19)   The capital of said business when commenced was $2,000.   *   *   *

"(23)   On October 30, 1909, plaintiff paid Kelly $2,500, $500 of which was deposited in the bank in accordance with contract J.   *   *   *

"(28)   After plaintiff learned the true amount of indebtedness and the value of said stock of merchandise, he withdrew the $500 from the bank and has ever since retained the same.

"(29)   Upon learning the true condition of said business, plaintiff elected to rescind said contract and caused to be made an inventory, showing the value of said stock to be $5,598.17, and the bills receivable $1,927.36, and that Kelly was not present or notified to be present when such inventory was made; that plaintiff continued in the management of said business, but the evidence does not show that he excluded Kelly therefrom, and is now conducting same for the use and benefit of himself and defendant Kelly.

"(30)   That during the time plaintiff has conducted said business he has made a net profit of $3,018.18.   *   *   *

"(34)   That defendant Sutherland never in good faith purchased said property, and that the pretended purchase was merely colorable transaction entered between himself and Kelly to cheat, wrong, and defraud the copartnership of West & Kelly out of said property, or the proceeds thereof.

"(35)   That, before Sutherland paid the purchase price of said property or executed the note in payment therefor, he knew of the claim made by plaintiff on behalf of said copartnership to said real estate.

"(36)   The note for $900 which Sutherland gave to Kelly or his wife was nonnegotiable and was not paid by Sutherland until after this suit was filed, not until after the injunctional order herein was served upon him, re-

straining him from mortgaging or disposing of said real estate. * * *

"(39) That upon an accounting between West and Kelly, Kelly is indebted to West in the sum of $5,174.48.

"Conclusions of Law.

"(a) That said written agreement should be set aside and held for naught. * * *

"(e) That West declared to own a three-fourths of all of said property, real and personal; and defendant Kelly a one-fourth thereof. * * *

"(h) That said real estate be sold as a part of said copartnership property, subject to said mortgage.

"(i) That West recover judgment against Kelly for $5,174.48. * * *

"(l) That the court should make an order herein dissolving said co-partnership. * * *"

The report of the referee was confirmed by the court, and a decree entered in conformity with the findings of fact, which resulted in a judgment for a considerable sum against Kelly personally, and declaring that the residence property, held by defendant Sutherland, was in reality a part of the assets of the firm of Kelly & West, and directing the said Sutherland to reconvey the same, and that upon his failure to do so the decree should operate as such conveyance.

Numerous grounds are urged for reversal, but some of them will hardly require a detailed discussion. First, it is insisted that there is no formal order in the decree, setting aside the contract by which Kelly's interest was acquired. This is, in a sense, true. It is not, in the formal language usual in a decree, declared specifically that this contract is annulled, set aside, and held for naught; but the entire decree, settling and disposing of the various interests of the parties, proceeds on the predicate that the contract is set aside; and all its various hold-

ings and adjustments would be without foundation, except on this predicate. Besides, one of the formal recommendations in the referee's report is "that said written agreement should be set aside and held for naught." The report of the referee, including this recommendation, was by the court formally sustained and confirmed in the decree. Besides, the parties made certain agreements, as set out in the judgment, regarding the net profits made by the firm, the value of the assets of the firm, and that they were to be retained by West, and that Kelly, in the final settlement of the partnership, should be allowed his part, etc.; all of which treat the judgment as sufficient to annul the contract for the purchase of Kelly's interest; and we hold, from an examination of the entire decree, that it is amply sufficient for this purpose, and that therefore this point is not well taken.

The other points argued, and which call for discussion, are objections, which were made in various forms and for different reasons, to receiving and filing the report of the referee. The first one of these is based on the fact that the report was not filed on the day required in the order of reference, and the claim that the order allowing further time was not in fact a court order, but was made by the judge at his residence. To support this point, an affidavit was filed in the trial court that the judge, while on the bench, had made a remark that he was sick at home when he signed this order. However, it appears in the record here as a regular court order, spread upon the journals of the court, and no authorities are mentioned in counsel's brief to support an attack of this kind upon the recitals of the journal of a court order. Some other matters are discussed in connection with this point, but they need no attention.

Another reason urged against the action of the court in receiving, filing, and confirming the referee's report is that the referee failed, before entering upon the discharge of his duties, to take and subscribe the official oath set forth in the Constitution of this state. Article 15, sec. 1. No authority is cited to sustain this contention, and we know of none. The record discloses that, prior to entering upon the discharge of his duty, the referee subscribed and filed with the papers an oath in substantial compliance with section 5024, Rev. Laws 1910; and a substantial compliance therewith has been held sufficient in the case of *Province v. Lovi,* 4 Okla. 672, 47 Pac. 476. Even the failure to take the oath prescribed by statute has been held to be merely an irregularity, which will be deemed to have been waived, where the parties proceed to trial and submit their case without an objection on this specific point. *Logan v. Brown,* 20 Okla. 353, 95 Pac. 441, 20 L. R. A. (N. S.) 298. However, the contention is evidently based upon the assumption that the referee, appointed by the court in a particular case, would, in addition to the oath prescribed by statute in such cases, be required to further qualify by taking the constitutional oath prescribed for "senators and representatives, and all judicial, state and county officers." If there are authorities holding that the referee would be required to take this oath, they have not been found by counsel, and we do not feel called upon to make a search for them so as to decide the point. However, it is very likely true, without specifically deciding that it is, that it would not be required in such a case; and, even if it were required, that it would not render acts performed invalid, as between the parties and where the public is concerned, but would

only be a matter to arise at the instance of the sovereign, or where the title to the office was involved. Such is intimated in Throop on Public Officers, sec. 630.

It is further urged that this entire proceeding should be set aside and the cause reversed, because the referee permitted an amendment to the petition. Counsel evidently believed the referee possessed this power, or, if not, was willing in advance to agree that it should be used, when he joined in the written request for the appointment of this particular person as referee, and asked that he be clothed "with power to settle issues," etc. It may also be noted that counsel filed for one of his clients a supplemental answer before the referee on the date the hearing began, and the matters so raised were considered by the referee and relief granted on account thereof by the court. If the referee exceeded his authority in this matter, it was waived, and in fact the motion asking that the referee be authorized to exercise this power, coupled with defendant's action in invoking in his own behalf its exercise, is equivalent to a stipulation that it might be done. They had the right to so stipulate. It was said by this court in *Hertzel v. Weber*, 31 Okla. 5, 120 Pac. 589, quoting with approval from 36 Cyc. 1285, that:

"Any matter which involves the individual rights of the parties to a cause may properly be made the subject of stipulation between them. They may by stipulation waive the benefit of a statutory or constitutional provision or rule of law, or irregularities, and they may agree upon the existence or truth of certain facts."

Some other points made would require a review of the evidence, and it is, confessedly, not all here. Other points need no discussion. We do not like to designate the many points noted, and those not discussed, as mere tech-

nicalities, for no doubt they have been made and urged in the utmost good faith; but from a consideration of all the record before us, teeming as it does with evidence of the wrongdoing, the breach of confidence and want of good faith upon the part of Kelly, without describing his conduct by the use of harsher terms, which it probably deserves, we are impressed with the idea that his counsel have fought hard and skillfully every inch of the way, and uphill, with the consciousness they were battling in a losing cause. The decree is just and equitable, and the only error involved in the relief granted is that it has been too long delayed.

Relative to the conveyance to appellant Sutherland, there is conflict in the evidence; but the findings of the referee are based upon ample proof and will not be interfered with.

The judgment of the trial court should be affirmed.

By the Court: It is so ordered.