BIRCHARD, Appellant, v. SIMONS, Respondent.

(240 N. W. 490.)

(File No. 7176. Opinion filed January 25, 1932.)

*Roscoe Knodell* and *Hannett & Hannett,* all of Winner, for Appellant.

*J. F. Frame* and *Charles A. Davis,* both of Burke, for Respondent.

ROBERTS, J. Plaintiff instituted this action to determine adverse claims to real property. The trial court found the facts and conclusions of law favorable to the defendant, and from judg-

ment thereon and from order denying motion for new trial plaintiff appeals.

The complaint alleges that Peter H. Simons, now deceased, acquired title to lot 5 and the south half of lot 4 of block 31 of the city of Winner, Tripp county, S. D.; that in his lifetime he made executed, and delivered to the defendant a warranty deed conveying the premises upon the express condition that the defendant was to hold the property in trust for the use and benefit of plaintiff and that the defendant after the death of the grantor was to convey to her the fee-simple title to the premises; that Peter H. Simons died on the 14th day of December, 1924, and that thereafter on or about the 1st of October, 1926, the defendant, pursuant to the trust agreement, executed and delivered to the plaintiff a deed conveying the property in controversy; that the deed was not signed by the defendant's wife and that the same was returned to the defendant with the request that he have his wife sign the deed and that the defendant thereafter refused to return the deed to the plaintiff; that the plaintiff is the owner and in possession of the property, and has paid taxes, and insurance thereon, and has also paid large sums on an existing incumbrance.

Answering, defendant denied generally the allegations of the complaint and by way of an affirmative defense and a counterclaim alleged that Peter H. Simons died testate having executed an olographic will; that at Herrick, S. D., on the 20th day of November, 1920, Peter H. Simons executed and delivered to this defendant a promissory note for the sum of $600 with interest at the rate of 10 per cent per annum payable annually; and that as collateral security and for the payment of said indebtedness, and not otherwise, Peter H. Simons on the 24th day of February, 1923, executed and delivered to this defendant a certain warranty deed conveying the real estate in controversy. The reply of plaintiff consists of specific denials and a general denial of the allegations of the counterclaim.

The trial court found that on or about the 1st day of October, 1926, defendant made, executed, and tendered to the plaintiff herein a deed to the premises in controversy, and that the plaintiff refused to accept the deed and returned it to the defendant, and demanded that he execute another deed conveying the premises to her and that he also have his wife join in the execution of the

deed. Plaintiff challenges the finding that she refused to accept the deed as inconsistent with the undisputed evidence. From the evidence it appears that the plaintiff had been employed for a period of more than 25 years by Peter H. Simons, brother of the defendant, and that at the time of his death Peter H. Simons was indebted to the plaintiff on a promissory note for services rendered and money loaned to the amount of approximately $4,000. Plaintiff testified that shortly after the death of Peter H. Simons she had a conversation with defendant in the presence of the two sons of deceased; that defendant then asked the plaintiff which she would prefer to have, $4,000 or the house, and that she replied that she would take the house; that defendant told the sons that their father had executed a deed to him and that he was to transfer title to the property to the plaintiff and that he would make such conveyance when settlement had been completed. Another conversation was related by the plaintiff with the defendant in the presence of one Lela B. Waterbury, in which the defendant stated that the plaintiff was to have the amount of the indebtedness or the house, and that she agreed to take the house. This is substantiated by the testimony by Lela B. Waterbury.

The defendant admits that he signed and acknowledged the deed conveying the property to the plaintiff, and that after executing such deed he mailed it to the plaintiff. D. A. Sinclair testified that the plaintiff came to his office with an instrument purporting to be a deed; that she showed the deed to him and he examined it; that it was an ordinary warranty deed for the premises in question signed by Louis Simons, and naming Rebecca Birchard as grantee; and that Mrs. Birchard asked him the nature of the instrument. Plaintiff in her testimony stated that she went from the office of D. A. Sinclair to the courthouse for the purpose of having the deed recorded, and that she handed the deed to the register of deeds, J. C. Penne, for examination. J. C. Penne was called as a witness, and testified that Mrs. Birchard came to his office with a deed and tendered it for record. He examined the deed and to his best recollection it was signed by Louis Simons, but he was unable definitely to give a description of the property in the deed.

The evidence indicates that plaintiff wrote a letter to the defendant, which is not in the record, and with the letter inclosed the deed. Under date of October 14, 1926, the defendant replied to

this letter: "I received the deed and Louise had signed it also, although it was not necessary because the property was never used as a homestead by us." Relating to the circumstances under which the deed was returned and his refusal to deliver another deed, the defendant testified as follows: "That deed came back to me and was destroyed. Mrs. Birchard sent me a letter with the deed, I may have that letter but I don't know. It may be among my papers. I didn't look it up but I know about the contents of it. Mrs. Birchard told me that the deed was no good unless my wife signed it. I don't know that she asked me to return it. She supposed I would return it. I sent her a letter and told her then I wouldn't give her the deed until I got a satisfactory statement out of the stuff she sold and rents collected. After that I was ready to give her the deed. I know the property described in the complaint in this action, Lot Five and South Half of Lot Four, Block Thirty-One of the City of Winner, and that the property that is described in the deed which I executed and mailed to Mrs. Birchard. I never refused to give Mrs. Birchard a deed to the property, except I was holding off for a settlement. I conceded that she was to have the home property, when she settled with me for the personal property in the store building down there and to settle for rents which she collected, which I claimed don't belong to her, and also turn over the safe and piano. I was just holding the deed back until she would do those things."

 Delivery and acceptance are essential elements of conveyance of title by deed. Reid v. Gorman et al, 37 S. D. 314, 158 N. W. 780; Rasmussen v. Standfield et al, 49 S. D. 120, 206 N. W. 475. The necessity of acceptance is sometimes declared in the terms of a definition of complete delivery. The grantor by delivery of the deed divests himself of title, and the acceptance is the act by which the grantee is invested with title to the property. If there is a concurrent act of both parties, an intent on the part of the grantor to divest himself of title and an intent on the part of the grantee to accept title, there is a complete delivery. Necessity for the concurrent existence of delivery and acceptance for the transfer of real property is stated in 8 R. C. L. 978 as follows: "The intention of the parties is an essential element of delivery of a deed. It has been called the essence of delivery, and not only is often the determinative factor among other facts and circum-

stances, but is the crucial test where constructive delivery is relied upon. Categorically stated, the rule is that to the delivery of a deed it is essential that there be a giving by the grantor and a receiving by the grantee, with a mutual intention to pass the title from the one to the other; or, conversely, that it is sufficient when the deed is executed, and the minds of the parties meet, expressly or tacitly, in the purpose to give it present effect. It is apparent, therefore, that something in the nature of contractual consensus is necessary to the final step in the execution of a deed,—that the grantor must intend to deliver and the grantee intend to accept."

██ ██ The deed which was signed and acknowledged by the defendant and forwarded by mail to the plaintiff is not in existence, having been destroyed by defendant. It is not claimed, however, that it was not properly prepared or was not legal in form. Peter H. Simons in his lifetime transferred the property in question to the defendant, and it is not contended that the wife of the defendant ever had any interest or title in the premises. It is conceded that she had no homestead right therein at the time of the execution of a warranty deed to the plaintiff, and that plaintiff in returning the deed acted under a misapprehension as to the necessity of procuring the signature and acknowledgment of defendant's wife thereto. We are of the view that from a consideration of all the evidence there was an acceptance of title, and that the complete delivery of the instrument was not invalidated by the return of the deed to the grantor. A complete delivery is not subsequently invalidated by the fact that a grantee returns the deed to the grantor to obtain release of dower or homestead interest of grantor's wife, recording, safe-keeping, or other special purpose. 4 Thompson on Real Property, 970; 8 R. C. L. 987; 2 Devlin on Deeds, § 306. The evidence clearly indicates the grantor's intention to make a complete conveyance of the property. He mailed the deed to the plaintiff unaccompanied by any conditions or reservations, and placed the deed beyond his dominion and control. The fact that plaintiff returned the deed to the defendant for the purpose of procuring the signature of his wife in itself does not indicate that plaintiff had not accepted title to the premises, and there is no evidence indicating that if the wife of grantor refused to sign and acknowledge the deed that the plaintiff regarded the deed insufficient to convey the interest and title of the defendant and that she

had not vested herself with whatever interest or title defendant had in the property.

The plaintiff retained possession of the premises, paid taxes thereon, insured the house, paid and secured satisfaction of a mortgage of $750 against the premises. Such subsequent conduct of the plaintiff is indicative of her intention, and of the belief that she had vested herself with title to the premises.

Defendant cites and relies upon the decision of the Supreme Court of Kentucky in Ward et al v. Rittenhouse Coal Co., 152 Ky. 228, 153 S. W. 217. The facts in that case are distinguishable from the instant case. It appears from the facts therein that after the deed was signed and acknowledged it was left with the notary with directions to procure the signature and acknowledgment of the grantor's wife. The instrument was delivered by the notary to the grantor, who destroyed the deed. It also appears that the consideration agreed upon for the transfer of the property was returned to the grantee. The deed under which the plaintiff in that case asserted title was executed in 1903 and no claim was made to the land prior to 1909. During this time the plaintiff and her husband lived within a few miles of the property, knew who was in possession, what improvements were being made, and asserted no title to the property.

■ ■ Plaintiff alleges that Peter H. Simons conveyed the property in controversy by warranty deed to the plaintiff in trust for the use and benefit of the plaintiff. Defendant urges that there was no competent evidence offered by the plaintiff to support this allegation; that the trust for the benefit of the plaintiff in this property was not created or declared by a written instrument as required by statute.

A trust is either voluntary or involuntary. Section 1185, Rev. Code 1919. "An involuntary trust," under the provisions of section 1187, Rev. Code 1919, "is one which is created by operation of law," and section 1194, Rev. Code 1919, provides that "one who gains a thing by fraud, accident, mistake, undue influence, the violation of a trust, or other wrongful act, is, unless he has some other and better right thereto, an involuntary trustee of the thing gained, for the benefit of the person who would otherwise have had it." It is clear that under the facts disclosed by the record there was no involuntary trust, trust by operation of law, or resulting trust.

The asserted title to the premises in question rests therefore upon a voluntary or express trust, and preliminary to an examination of the statutes as to the manner of creating such a trust we will consider the sections of the Code relating to the purposes for which express trusts may be created. In section 366, Rev. Code 1919, it is provided that "uses and trusts, in relation to real property, are those only which are specified in this article." Section 374 in the same article of the Code specifies the purposes for which an express trust may be created, and a trust to convey real estate is not included, except as it may be incident "to sell real property, and apply or dispose of the proceeds in accordance with the instrument creating the trust." Construing identical provisions, the Supreme Court of California has held that a trust to convey real property is void. In re Fair's Estate, 132 Cal. 523, 60 P. 442, 64 P. 1000, 84 Am. St. Rep. 70; McCurdy v. Otto, 140 Cal. 48, 73 P. 748; Lauricella v. Lauricella, 161 Cal. 61, 118 P. 430.

This court in Murphy et al v. Cook, 11 S. D. 47, 75 N. W. 387, held that an instrument creating an express trust, not within the provisions of section 2798, Comp. Laws (section 374, Rev. Code 1919) and not providing for the doing of any act in relation to, or creation or any charge, or revocation of any estate in the land conveyed, was invalid.

The provisions of section 374 above referred to are qualified by the provisions of section 377, Rev. Code 1919. This section reads as follows: "Where an express trust in relation to real property is created for any purpose not enumerated in the preceding sections, such trust vests no estate in the trustees; but the trust, if directing or authorizing the performance of any act which may be lawfully performed under a power, is valid as a power in trust, subject to the provisions in relation to such powers contained in article 5 of this chapter."

A trust in land may be blended with a power, and under the express provisions of section 377, if the trust is coupled with a direction or authorization of "the performance of any act which maye be lawfully performed under a power," the power in trust to convey is valid. A valid conveyance of land in trust with direction to transfer title to a designated third person may be made. Sections 390 and 396, Rev. Code 1919. The section of the Code of California similar to the provisions of section 377 and the chaper

of the Code of that state on "Powers" were repealed in 1874, and the decisions of the state of California referred to are not applicable with reference to the validity of powers in trust to convey by reason of the difference in statutory provisions.

Sections 1191 and 1192, Rev. Code 1919, read as follows:

"§ 1191. Subject to the provisions of section 371, a voluntary trust is created, as to the trustor and beneficiary, by any words or acts of the trustor, indicating with reasonable certainty: 1. An intention on the part of the trustor to create a trust; and, 2. The subject, purpose and beneficiary of the trust."

"§ 1192. Subject to the provisions of section 371, a voluntary trust is created, as to the trustee, by any words or acts of his, indicating with reasonable certainty: 1. His acceptance of the trust, or his acknowledgment, made upon sufficient consideration, of its existence; and, 2. The subject, purpose and beneficiary of the trust."

Section 371, Rev. Code 1919, referred to in the above sections, provides: "Requisites of a Trust. No trust in relation to real property is valid, unless created or declared: 1. By a written instrument, subscribed by the trustee or by his agent thereto authorized by writing; 2. By the instrument under which the trustee claims the estate effected; or, 3. By operation of law."

No voluntary trust, relating to real property, can be enforced if it is not in writing. Reagan et al v. McKibben et al, 11 S. D. 270, 76 N. W. 943; Annis et al v. Huggins et al, 35 S. D. 300, 162 N. W. 114; Viau v. Viau, 57 Cal. App. 66, 207 P. 39.

The deed executed and delivered by the decedent to the appellant was absolute and unconditional. It contained nothing indicating that the property was conveyed in trust and this is likewise true of the alleged will introduced in evidence. There was no express declaration in writing on the part of the defendant that this was property held in trust for the plaintiff.

We are not here concerned with the establishment or the enforcement of an executory parol agreement to convey land, but a situation is presented where the grantee has fully performed the parol trust imposed upon him. It is generally held that after a parol trust has been fully performed and executed, it will be upheld at the instance of the beneficiary and the statute of frauds will be deemed to have no application. Lasley v. Delano, 139

Mich. 602, 102 N. W. 1063, 1064; Bork v. Martin 132 N. Y. 280, 30 N. E. 584, 28 Am. St. Rep. 570; Karr v. Washburn, 56 Wis. 303, 14 N. W. 189; Logan v. Brown, 20 Okl. 334, 95 P. 441, 20 L. R. A. (N. S.) 298; Johnston v. Jickling, 141 Iowa 444, 119 N. W. 746; Straw v. Mower et al, 99 Vt. 56, 130 A. 687, 690; King v. Bushnell, 121 Ill. 656, 13 N. E. 245; Bailey v. Wood, 211 Mass. 37, 97 N. E. 902, Ann. Cas. 1913A, 950.

"The statute is for the protection of the holder of the legal title, to enable him, in case his title is assailed while the trust is still executory, to insist on certain modes of proof, but, if he elects to forego such statutory protection, and performs the moral obligation resting upon him by virtue of the trust agreement, it does not lie in the mouth of a party who has acquired no intervening rights to say that the contract was void, and that it therefore conferred no rights." Straw v. Mower et al, supra.

A parol express trust is not an absolute nullity. The statute does not require a trust in land to be both created and declared in writing. If either the creation or the declaration is in writing, the statute is satisfied. It was within the power of the defendant to declare the trust in the manner provided by statute. If he exercised the option to convey and perform the trust, upon sound reason and the decided cases he cannot invoke the statute to defeat the vested interest of the beneficiary. In Lasley v. Delano, supra, the court says: "The parol contract between complainant and Mr. Delano has been performed, and the parol trust imposed upon him fully executed. * * * If, however, the trust rested in parol, and while so resting could not be enforced as an executory contract, yet, when the parol agreement has been executed, neither party can invoke the statute. The courts have repeatedly held that a party may perform a promise which he would not legally be compelled to perform, and that, when so performed, it is binding upon him and the other party to it."

The other assignments of error presented do not, under the conclusions reached upon the questions reviewed, become essential to a final determination of this appeal, and are therefore not considered.

The judgment and order appealed from are reversed.

CAMPBELL, P. J., and POLLEY, WARREN, and RUDOLPH, JJ., concur.