#26594-r-GAS

**2014 S.D. 18**

IN THE SUPREME COURT
OF THE
STATE OF SOUTH DAKOTA

* * * *

STATE OF SOUTH DAKOTA,                    Plaintiff and Appellee,

    v.

KENNETH DALE THOMASON,                    Defendant and Appellant.

* * * *

APPEAL FROM THE CIRCUIT COURT OF
THE FOURTH JUDICIAL CIRCUIT
LAWRENCE COUNTY, SOUTH DAKOTA

* * * *

THE HONORABLE WARREN G. JOHNSON
Judge

* * * *

MARTY J. JACKLEY
Attorney General

CRAIG M. EICHSTADT
Assistant Attorney General
Pierre, South Dakota                      Attorneys for plaintiff
                                          and appellee.


ELLERY GREY
Grey Law
Rapid City, South Dakota                  Attorneys for defendant
                                          and appellant.

* * * *

ARGUED OCTOBER 2, 2013
OPINION FILED **04/09/14**

#26594

SEVERSON, Justice

[¶1.] Kenneth Dale Thomason, Jr. (Thomason) was convicted of Aggravated Grand Theft by Deception Over $100,000 and sentenced to 25 years in the South Dakota State Penitentiary. Thomason appeals arguing the trial court erred by: (1) refusing to grant his Motion for Judgment of Acquittal; (2) failing to instruct the jury regarding the defense of advice of counsel; and (3) instructing the jury that it could consider defendant's flight as it related to consciousness of guilt. There was insufficient evidence to prove that Thomason obtained the "property of another" worth over $100,000, therefore the circuit court erred by not granting Thomason's motion for judgment of acquittal. We reverse.

## Background

[¶2.] In 2004, Thomason and his wife, Kim Thomason, purchased the Gold Town Hotel (Hotel) in Lead, South Dakota. Thomasons purchased the Hotel from Tamra Bennett (Bennett) by a contract for deed. In March 2005, Kim Thomason's mother Barbara Langlois (Langlois) began sending money to Thomasons. The transfers were understood to be loans.

[¶3.] In December 2005, Bennett, who still held legal title to the property and business, threatened to reclaim the property if Thomasons did not pay a deficient amount by the end of December. Short on cash, Thomasons requested $50,000 from Langlois. Langlois agreed to a $50,000 loan. She drafted, without professional assistance, a quitclaim deed that she described as for security. No other document assigns or further defines a security interest. On December 8, 2005, Thomasons gave the signed quitclaim deed for the hotel (2005 quitclaim deed)

-1-

to Langlois. Subsequently, on December 12, 2005, Langlois transferred $50,000 to Thomasons. Langlois testified that the quitclaim deed was to be used as a security interest alone, and that she never intended to file the deed. Langlois did not, at that time, file the deed. Thomasons continued to request loans from Langlois. With the loaned money, Thomasons made repairs and improvements to the Hotel.

[¶4.] In 2006, Bennett stated that due to missed payments, the Hotel property was again subject to foreclosure. Langlois agreed to assist Thomasons by loaning them additional money. Langlois retained attorney Brad Schreiber (Schreiber) and an agreement was negotiated between Thomasons and Bennett. Ultimately, Langlois loaned Thomasons $328,133.01 to pay Bennett the remaining money due on the contract. Bennett delivered a warranty deed, dated September 27, 2006, naming Thomasons as grantees. Langlois was present during the negotiations and personally delivered the warranty deed to the Lawrence County Register of Deeds on December 11, 2006, even paying the filing fee.

[¶5.] Eventually, the parties' relationship deteriorated. Langlois was frustrated that she was not receiving repayment for her loans. Poor record keeping contributed to the frustration as the amount of money owed and interest rate was not precisely recorded, though Langlois told Schreiber that Thomasons owed her approximately $521,000. In November 2007, Langlois sought assistance from Schreiber in recovering her loans from Thomasons.

[¶6.] Schreiber, upon learning of Langlois' unrecorded 2005 quitclaim deed, advised Langlois to record it. Langlois recorded the 2005 quitclaim deed on November 16, 2007. Langlois then instructed Schreiber to serve an eviction notice

on Thomasons. Spurred by the eviction threat, Thomasons negotiated with Schreiber to settle the outstanding debt and eviction issues. Eventually the parties negotiated an agreement, memorialized in a "Letter of Intent/Agreement" (Letter) signed by Langlois and Thomasons on January 7, 2008.

[¶7.] According to the Letter, it was understood that Thomason made an application for a loan in the amount of $350,000 that was set for closing on January 9, 2008. The letter recites Thomason's concern that since Langlois filed the 2005 quitclaim deed, the loan closing may be impacted. The Letter also states that Thomason would pay Langlois $200,000 as partial payment for the debt due and owing to her. Additionally, Langlois was later to obtain a mortgage against the property from Thomasons for an amount that was to be determined. Shortly after the Letter's execution, Schreiber provided Thomasons with a quitclaim deed (2008 quitclaim deed). The 2008 quitclaim deed, acknowledged on December 28, 2007 and recorded on January 29, 2008, at 2:59 p.m., conveyed any interest Langlois had in the Hotel to Thomasons and their son Dale.

[¶8.] Thomasons were unable to obtain a traditional loan secured by a mortgage. Instead, on approximately January 10, 2008, Thomasons entered into a "lease-to-buy-back" agreement with Christopher and Shalece Vinson from Sioux Falls. As required by the agreement, Thomasons transferred title to the Hotel to Vinsons as security for a payment they made to Thomasons. The lease-to-buy-back contract was to be paid over the next several years while Thomasons continued to occupy and manage the Hotel. As structured, Thomasons would recover title to the property at the end of the payment period. By the time various other liens and

amounts were paid off, from the $350,000 transaction, Thomasons collected $206,687.12.

[¶9.] When Langlois did not receive her money by January 14, 2008, she contacted Schreiber. Langlois also attempted to contact Thomasons. Thomasons, however, were gone. Before the end of January 2008, Thomasons left for the Dominican Republic. Thomasons claim the trip was a pre-planned vacation, yet they stayed for approximately four years. Before they left, they retained the services of attorney Scott Armstrong (Armstrong).

[¶10.] After he reviewed the file, Armstrong was concerned that the 2005 quitclaim deed did not convey any interest in the Hotel and that Langlois was unable to arrive at a total amount owed. Based on those concerns and until they were addressed, Armstrong advised Thomasons not to pay Langlois the $200,000. Armstrong and Schreiber corresponded over their clients' concerns.

[¶11.] Unable to contact Thomasons, Langlois contacted the Lead Police Department and filed a complaint. On May 1, 2008, a Lawrence County Grand Jury indicted Thomason on charges of Aggravated Grand Theft by Deception Over $100,000.[1] On August 31, 2012, the Lawrence County Grand Jury entered a Superseding Indictment which added an aiding and abetting theory plus a second count of Aggravated Grand Theft by Obtaining Property Without Paying.[2]

---

1. Kim Thomason was also indicted. She subsequently pleaded guilty to a reduced charge.

2. The Superseding Indictment states as follows:

(continued . . .)

-4-

#26594

Additionally, the State filed a Part II Information alleging that Thomason previously had been convicted of a felony. A trial was scheduled for November 26 - 30, 2012.

[¶12.] At trial, Thomason offered five jury instructions, including an instruction setting out the defense of advice of counsel, all of which the trial court

_____

(. . . continued)

COUNT I: AGGRAVATED GRAND THEFT BY DECEPTION OVER $100,000.00 (Class 3 Felony)

That on or about and during the month of January, 2008, pursuant to one scheme or course of conduct, in the County of Lawrence, State of South Dakota, the Defendant did, with the intent to defraud, obtain property from [SDCL 22-30A-3 states "of," not "from"] Barbara Langlois valued in an amount of more than $100,000, by:

1) creating or reinforcing a false impression as to the value, intention or other state of mind; or
2) failing to correct a false impression which the deceiver previously created or reinforced, or which the deceiver knows to be influencing another to whom he stands in a fiduciary or confidential relationship; or

or [sic] did aid and abet in the commission of the crime. Contrary to SDCL 22-30A-3(1), SDCL 22-30A-3(3), SDCL 22-30A-17.1 and 22-3-3.

OR IN THE ALTERNATIVE:

COUNT IA: AGGRAVATED GRAND THEFT BY OBTAINING PROPERTY WITHOUT PAYING

That on or about and during the month of January, 2008, within Lawrence County, State of South Dakota, the Defendant, did obtain property which he knew was available for compensation, by deception, or other means to avoid payment for the property, namely, property belonging to Barbara Langlois, the value of which exceeds $100,000.00, or did aid and abet in the commission of the crime. Contrary to SDCL 22-30A-17(1) and 22-30A-8 and 22-3-3.

refused. Thomason also moved for a judgment of acquittal, which the trial court denied. Also, Thomason objected to a jury instruction on flight or concealment. After a three-day trial, the jury found Thomason guilty of count one Aggravated Grand Theft by Deception Over $100,000 and not guilty of the alternative charge of Aggravated Grand Theft by Obtaining Property Without Paying. Thomason entered an admission to the Part II Information and was subsequently sentenced to 25 years in the South Dakota Penitentiary.

[¶13.]	Thomason appeals, arguing the trial court erred by: (1) refusing to grant his Motion for Judgment of Acquittal; (2) failing to instruct the jury regarding the defense of advice of counsel; and (3) instructing the jury that it could consider his flight as it related to consciousness of guilt. We need only address the first issue.

## Standard of Review

[¶14.]	The standard of review for a circuit court's ruling on a motion for judgment of acquittal is well-settled:

> The denial of a motion for judgment of acquittal presents a question of law, and thus our review is de novo. We must decide anew whether the evidence was sufficient to sustain a conviction. In measuring evidentiary sufficiency, we ask "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt."

*State v. Podzimek*, 2010 S.D. 17, ¶ 6, 779 N.W.2d 407, 409 (quoting *State v. Klaudt*, 2009 S.D. 71, ¶ 14, 772 N.W.2d 117, 122).[3]

---

3.	The Superseding Indictment misstates SDCL 22-30A-3 by changing the words "obtain property of another" to "obtain property from another." This

(continued . . .)

## Analysis

[¶15.]  **Whether the trial court erred by refusing to grant Thomason's Motion for Judgment of Acquittal.**

[¶16.]  The State charged Thomason with Aggravated Theft by Deception Over $100,000, or alternatively, Obtaining Property Without Paying. SDCL 22-30A-3 defines theft by deception, in relevant part, as follows:

> Any person who obtains property of another by deception is guilty of theft. A person deceives if, with intent to defraud, that person:
>
> (1) Creates or reinforces a false impression, including false impressions as to law, value, intention, or other state of mind. However, as to a person's intention to perform a promise, deception may not be inferred from the fact alone that that person did not subsequently perform the promise;
>
> . . . .
>
> (3) Fails to correct a false impression which the deceiver previously created or reinforced, or which the deceiver knows to be influencing another to whom the deceiver stands in a fiduciary or confidential relationship; . . . .

[¶17.]  The jury found Thomason guilty of Aggravated Theft by Deception Over $100,000. Thomason argues that the State failed to prove beyond a reasonable doubt that he obtained the "property of another." The issue then is whether the evidence, viewed in a light most favorable to the prosecution, sufficiently showed that Thomason obtained by deception Langlois' property worth over $100,000 at or around January 2008, as charged in the Indictment.

_____

(. . . continued)
error was carried forward into the jury instructions without objection. It was not appealed nor addressed by any party, but we address our de novo review of the motion for judgment of acquittal based on the language of the statute charged rather than the wording in the indictment or instructions.

[¶18.] At trial, the State appeared to take the position that $200,000 of the proceeds from the lease-to-buy-back agreement mentioned in the Letter was Langlois' property that Thomason obtained by deception. Under this approach, the $200,000 of proceeds from the lease-to-buy-back agreement must be considered Langlois' property in order to satisfy the "property of another" element.

[¶19.] To determine whether the $200,000 mentioned in the Letter was Langlois' property, we look to the Letter. "Contract interpretation is a question of law reviewable de novo." *Ziegler Furniture & Funeral Home, Inc. v. Cicmanec*, 2006 S.D. 6, ¶ 14, 709 N.W.2d 350, 354. Upon review, the Letter mentioned a loan, but did not direct where the proceeds from the loan would go.[4] The Letter did state an understanding that after the loan closed, Thomason would pay Langlois between $150,000 and $200,000. But nothing in the Letter gave Langlois a legally enforceable interest in the proceeds from a loan or other type of financing agreement. Instead the Letter referred to an obligation to pay Langlois $200,000 by January 14, 2008, "for the debt due and owing to her." The Letter merely reiterated that a debt was due and owing to Langlois.

---

4. The Letter stated, among other things:

> It is my understanding that you have made application for a loan which is presently set for closing on January 9, 2008 in the amount of $350,000.00. It is also my understanding that you intend to pay Barbara Langlois between $150,000.00 and $200,000.00 after that loan has been closed as partial payment on those sums which are due and owing to her by yourself and your wife Kim. . . .
> . . . .
> That $200,000 will be paid to Barbara Langlois by 5 p.m., January 14, 2008 as partial payment for the debt due and owing to her.

[¶20.] At oral argument, the State analogized the proceeds in this case to the proceeds from selling expensive stolen silverware. The State said the proceeds are simply another form of stolen property. But here, the $200,000 mentioned in the Letter did not originate as stolen property. The $200,000 originated from one or more of the many loans that Langlois voluntarily gave Thomasons. Langlois does not contend, nor did the State argue, that the loans were obtained by deception. That would be a separate issue. *See State v. Kessler*, 2009 S.D. 76, 772 N.W.2d 132.

[¶21.] In *Podzimek*, the State argued the proceeds from the sale of secured vehicles were the Bank's property. 2010 S.D. 17, ¶ 10, 779 N.W.2d at 410. But the security interest on the vehicles was the only basis for the Bank to assert ownership. *Id.* ¶ 11. With the only possible interest in the proceeds being a security interest, the proceeds could not satisfy the definition of "property of another." *Id.* Also, we stated "[t]he fact that [Podzimek] did not use the proceeds to repay the Bank loan does not make the proceeds the Bank's money." *Id.* Similarly, the proceeds in this case are not the "property of another" because Langlois had no legally enforceable interest in them. And the fact that Thomasons did not use the proceeds to repay Langlois does not make the proceeds Langlois' money.

[¶22.] The $200,000 of proceeds from the lease-to-buy-back agreement could not have satisfied the "property of another" element because the Letter did not give Langlois a legally recognizable right to those proceeds. Instead, the Letter reiterated that a debt was due and owing to Langlois. It is undisputed that Thomason defaulted on those loans, but theft by deception is not a means to criminalize defaulted loans. *Kessler*, 2009 S.D. 76, ¶ 18, 772 N.W.2d at 138.

[¶23.]    On appeal, the State appears to take the position that the property obtained by deception was Langlois' interest in the Hotel. That interest, the State argues, was equitable title to the Hotel acquired by Langlois through the 2005 quitclaim deed. Then, the State argues, by signing the Letter and receiving the 2008 quitclaim deed, Thomason obtained Langlois' equitable title to the Hotel by deception—by his feigned promise to pay $200,000. Under this approach, Langlois' equitable title in the Hotel must then be considered "property of another" in order to sustain Thomason's conviction. Thomason argues that Langlois did not have an equitable interest in the Hotel in January of 2008.

[¶24.]    We previously addressed a split in equitable and legal title in *Anderson v. Aesoph*, 2005 S.D. 56, 697 N.W.2d 25. In *Anderson* we recognized that "[i]n a contract for deed, the installment vendor maintains 'legal title to the property while the vendee holds equitable title and has the right to use and possession of the property.'" *Id.* ¶ 21 (quoting *First Fed. Sav. & Loan Ass'n of Storm Lake v. Lovett*, 318 N.W.2d 133, 135 (S.D. 1982)). In addition to those rights, the equitable title holder has the final right to demand a deed upon the contract's completion. *Tarpinian v. Wheaton*, 79 S.D. 473, 479, 113 N.W.2d 472, 475 (S.D. 1962).

[¶25.]    As vendees and grantors, Thomasons held and could convey their purchaser's interest in the executory contract for deed with Bennett. A quitclaim deed is one way to transfer equitable title. *Anderson*, 2005 S.D. 56, ¶ 22, 697 N.W.2d at 31-32. A quitclaim deed conveys "all right, title, and interest of the grantor in the premises described, but shall not extend to after-acquired title, unless words expressing such intention be added." SDCL 43-25-8.

[¶26.]      Although a quitclaim deed conveys "all right, title, and interest of the grantor[,]" SDCL 43-25-8, if there is no delivery, there is no conveyance. SDCL 43-4-7. "Delivery and acceptance are essential elements of conveyance of title by deed." *Birchard v. Simons*, 59 S.D. 422, 240 N.W. 490, 492 (S.D. 1932). "Whether there has been delivery is a question of intent to be found from all the facts surrounding the transaction." *Hagen v. Palmer*, 87 S.D. 485, 488, 210 N.W.2d 164, 165 (S.D. 1973) (citations omitted). Grantor's intent to divest title and concurrent grantee's intent to accept title is essential to complete delivery of a deed. *Birchard*, 240 N.W. at 492.

[¶27.]      A review of trial transcript shows that Langlois had no intention to accept title, whether legal or equitable.

> **Attorney:** I understand. It's your understanding that the quitclaim deed is to secure—to be your security interest for $50,000?
>
> **Langlois:** Yes. And I never intended to use it.
>
> **Attorney:** Thank you for that.
>
> **Langlois:** Yes.
>
> **Attorney:** It doesn't say anything about this being a security interest for $50,000, however.
>
> **Langlois:** That's what I asked for.
>
> . . . .
>
> **Attorney:** And it's your testimony that you didn't want to own the building?
>
> **Langlois:** No, I didn't.
>
> **Attorney:** Okay.
>
> **Langlois:** Not at my age.
>
> . . . .
>
> **Attorney:** It was not your intent to own the building?
>
> **Langlois:** No. No.

Langlois expressly stated that it was not her intent to own the building by receiving the 2005 quitclaim deed. And she stated that she never intended to use the 2005 quitclaim deed. By not intending to accept title, Langlois could not have accepted delivery of a grant of title by a quitclaim deed. Instead, Langlois testified that the 2005 quitclaim deed she drafted was only to be used as security for the $50,000 loan she gave Thomasons. Langlois did not take possession of the property in 2005 when the quitclaim deed was signed. She further did not take possession when the contract for deed was paid in full in 2006 and a warranty deed from Bennett was filed with Thomasons named as grantees. Thus, consistent with her testimony, Langlois at most received a security position in the hotel. We need not address whether the 2005 document titled quitclaim deed transferred a valid security interest since by definition, a security interest in the equitable title to the Hotel does not meet the definition of "property of another." SDCL 22-1-2(36).

[¶28.]        "Property of another" is a defined term under SDCL 22-1-2(36):

> "Property of another," property in which any person other than the actor has an interest upon which the actor is not privileged to infringe, regardless of the fact that the actor also has an interest in the property and regardless of the fact that the other person might be precluded from civil recovery because the property was used in an unlawful transaction or was subject to forfeiture as contraband. Property in possession of an actor may not be deemed property of another who has only a security interest therein, even if legal title is in the creditor pursuant to a conditional sales contract or other security agreement[.]

Langlois had no interest in the Hotel which meets the definition of "property of another." As a result, there was no evidence that Thomason obtained Langlois' property by deception—an essential element of SDCL 22-30A-3. *See Podzimek*, 2010 S.D. 17, ¶ 14, 779 N.W.2d at 411-12.

#26594

[¶29.]     We need not decide the remaining issues that address intent. Thomasons admittedly owed Langlois a substantial amount of money. Thomasons' actions may well show intent not to repay the money they borrowed from Langlois. But intent is only one element of the crime. The State must prove all the elements of the crime charged. Here, the State did not prove the element of "property of another."

## Conclusion

[¶30.]     The State failed to provide evidence that either the proceeds from the lease-to-buy-back agreement or equitable title in the Hotel were Langlois' property in January of 2008. Therefore, the State did not prove all the elements of the crime of Aggravated Grand Theft by Deception Over $100,000 under SDCL 22-30A-3. Consequently, the circuit court erred by not granting Thomson's motion for a judgment of acquittal.

[¶31.]     We reverse and vacate Thomason's conviction.

[¶32.]     GILBERTSON, Chief Justice, and KONENKAMP, ZINTER, and WILBUR, Justices, concur.

-13-